## UNITED STATES DISTRICT COURT OF ILLINOIS
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CAPITAL ONE EQUIPMENT FINANCE CORP. f/k/a ALL POINTS CAPITAL CORP, d/b/a CAPITAL ONE TAXI MEDALLION FINANCE., <br><br> Plaintiff, <br><br> v. <br><br> BONUS TAXI, INC., CHICAGO POLO I, INC., CHICAGO POLO II, INC., CHICAGO POLO III, INC., CHICAGO POLO IV, INC., CHICAGO POLO XII, INC., DOLFINA TAXI, INC., ENETOCHKA TAXI INC., FUNNY MONICA IN CHICAGO, INC., GALINA CAB CORP., GAP CAB CORP., GREEN TEA CAB CORP., JASMIN TAXI INC., JUNE CAB CORP., LUCKY FOUR CAB CORP., LUCKY IN CHICAGO, INC., MAGENTA ZONE CAB CO., MAUVE ZONE CAB CO., MISHA CAT CAB CORP., MONACO TAXI INC., MONETA TAXI INC., PINK ZONE CAB CO., PRETTY RACHEL IN CHICAGO, INC., PRINCESS TAXI INC., RACHEL TAXI INC., RESERVIOR II HACKING CORP., SAMUEL TAXI CORP., SHAUN JR. TAXI INC., SIRO, INC., SLS JET CAB CORP., and VALEX CAB CORP., <br><br><br> Defendants <br><br> And <br><br> THE CITY OF CHICAGO DEPARTMENT OF BUSINESS AFFAIRS AND CONSUMER PROTECTION, <br><br> Nominal Defendant. | No. |

## COMPLAINT

Plaintiff CAPITAL ONE EQUIPMENT FINANCE CORP., formerly known as ALL

POINTS CAPITAL CORP, doing business as CAPITAL ONE TAXI MEDALLION

37659335v10

FINANCE ("COTMF" or "Plaintiff"), through its undersigned counsel, files this Complaint against Bonus Taxi, Inc., Chicago Polo I, Inc., Chicago Polo II, Inc., Chicago Polo III, Inc., Chicago Polo IV, Inc., Chicago Polo XII, Inc., Dolfina Taxi, Inc., Enetochka Taxi Inc., Funny Monica in Chicago, Inc., Galina Cab Corp., Gap Cab Corp., Green Tea Cab Corp., Jasmin Taxi Inc., June Cab Corp., Lucky Four Cab Corp., Lucky in Chicago, Inc., Magenta Zone Cab Co., Mauve Zone Cab Co., Misha Cat Cab Corp., Monaco Taxi Inc., Moneta Taxi Inc., Pink Zone Cab Co., Pretty Rachel in Chicago, Inc., Princess Taxi Inc., Rachel Taxi Inc., Reservior II Hacking Corp., Samuel Taxi Corp., Shaun Jr. Taxi Inc., Siro, Inc., SLS Jet Cab Corp., and Valex Cab Corp. (collectively, "Defendants") seeking a declaration that COTMF is entitled to complete its foreclosure on the Chicago, Illinois taxi medallions pledged by Defendants as collateral for loans made to them, and alleges upon personal knowledge as to itself and its own acts and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      COTMF is the assignee, owner, and holder of loans (each a "Loan"; collectively, the "Loans") made to Defendants.

2.      Each of the Loans is secured by certain licenses to operate taxicabs issued by the City of Chicago, Illinois (each a "Medallion"; collectively, the "Medallions") pledged by the Defendant that received that loan.

3.      All the Loans are in default because, among other reasons, Defendants failed to make the final balloon payments of all principal, which totals more than $38 million, and outstanding interest when the Loans matured in 2015.

4.      Pursuant to its rights under the security agreements (each a "Security Agreement"; collectively, the "Security Agreements") executed in connection with the Loans

37659335v10

and the Uniform Commercial Code, as codified in Illinois (810 ILCS 5, *et. seq.* the "Illinois UCC"), COTMF conducted a robust, well-attended public sale of the Medallions.

5.     The City of Chicago Taxicab Medallion License Holder Rules (the "Taxi Rules" cited herein as "Taxi Rule TX__") promulgated by the Chicago Department of Business Affairs and Consumer Protection (the "BACP") govern, among other things, the ownership of Chicago Taxi Medallions and the transfers of medallions following foreclosure.

6.     Pursuant to Taxi Rule TX13.02(b), if the owner of a Medallion being foreclosed upon sends an "Affidavit of Defense" (as defined in the Taxi Rules) to the secured lender within a certain time period "no transfer upon foreclosure will be allowed without the subsequent express written consent of the debtor/medallion licensee except **pursuant to an order of a court having jurisdiction**." Taxi Rule TX13.02(b) (emphasis added).

7.     Following COTMF's public foreclosure sale of the Medallions, each of the Defendants sent to COTMF and the BACP one or more affidavits of defense (each, an "Affidavit of Defense"; collectively, the "Affidavits of Defense") asserting various purported defenses to COTMF's foreclosure.

8.     By this Complaint, COTMF seeks the "order of a court having jurisdiction" required by Rule TX13.02(b) declaring that the purported defenses asserted by Defendants in the Affidavits of Defense are not valid defenses to transfer of the Medallions through COTMF's foreclosure, that Defendants have no valid defenses to COTMF's foreclosure of the Medallions, and that, subject to compliance with the Taxi Rules and the approval of the BACP, COTMF is entitled to effect a transfer of the Medallions as a result of its foreclosure on them.

9.     The BACP is named solely as a nominal defendant because it issues and regulates the transfer of the Medallions and promulgated and enforces the Taxi Rules. Taxi Rule

TX13.02(b) does not specify the form or content of an order that the BACP would deem sufficient to approve a transfer notwithstanding the lodging of affidavits of defense. Accordingly, the BACP is named as a nominal defendant to facilitate any relief granted to COTMF and to permit the BACP to provide input regarding the form and content of an order that it would deem acceptable in order to approve a transfer of the Medallions notwithstanding the Affidavits of Defense.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

11.     As set forth below, there is complete diversity of citizenship between Plaintiff and Defendants because each Defendant is a citizen of Illinois, only, but COTMF is not.

12.     As set forth in more detail below, the amount in controversy with respect to each Defendant exceeds $75,000, exclusive of interest and costs, because the bid for each Medallion at issue was at least $23,000 and each Defendant owns at least four Medallions that COTMF seeks to transfer through foreclosure.

13.     Defendants consented to personal jurisdiction in this Court and to exclusive venue in a state or federal court located within Cook County, Illinois pursuant to Consent to Collection Agreements executed in connection with each Loan.

14.     Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants are residents of the Northern District of Illinois.

15.     Venue is also proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because all of the property that is the subject of the action is situated in Cook County, Illinois.

4

## THE PARTIES

16.     Plaintiff COTMF is a New York corporation with a principal place of business in New York, New York.

17.     Nominal Defendant BACP is a City of Chicago agency with its principal offices at 121 N. LaSalle Street, 8th Floor, Chicago, Illinois 60602.

18.     Bonus Taxi, Inc. ("Bonus Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

19.     Chicago Polo I, Inc. ("Chicago Polo I") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

20.     Chicago Polo II, Inc. ("Chicago Polo II") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

21.     Chicago Polo III, Inc. ("Chicago Polo III") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

22.     Chicago Polo IV, Inc. ("Chicago Polo IV") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

23.     Chicago Polo XII, Inc. ("Chicago Polo XII") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

24.     Dolfina Taxi, Inc. ("Dolfina Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

25.     Enetochka Taxi Inc. ("Enetochka Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

26.     Funny Monica in Chicago, Inc. ("Funny Monica") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

27.     Galina Cab Corp. ("Galina Cab") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

28.     Gap Cab Corp. ("Gap Cab") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

29.     Green Tea Cab Corp. ("Green Tea Cab") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, IL 60616.

30.     Jasmin Taxi Inc. ("Jasmin Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

31.     June Cab Corp. ("June Cab") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

32.     Lucky Four Cab Corp. ("Lucky Four Cab") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

33.     Lucky in Chicago, Inc. ("Lucky in Chicago") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

34.     Magenta Zone Cab Co. ("Magenta Zone") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

35.     Mauve Zone Cab Co. ("Mauve Zone") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

36.     Misha Cat Cab Corp. ("Misha Cab") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

37.     Monaco Taxi Inc. ("Monaco Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

38.     Moneta Taxi Inc. ("Moneta Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

39.     Pink Zone Cab Co. ("Pink Zone") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

40.     Pretty Rachel in Chicago, Inc. ("Pretty Rachel") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

41.     Princess Taxi Inc. ("Princess Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

42.     Rachel Taxi Inc. ("Rachel Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

43.     Reservior II Hacking Corp. ("Reservior II") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

44.     Samuel Taxi Corp. ("Samuel Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

45.     Shaun Jr. Taxi Inc. ("Shaun Jr. Taxi") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

46.     Siro, Inc. ("Siro") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

47.     SLS Jet Cab Corp. ("SLS Jet") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

48.     Valex Cab Corp. ("Valex Cab") is an Illinois corporation with its principal place of business at 2617 S. Wabash Ave., Chicago, Illinois 60616.

**TRI GLOBAL ORIGINATES THE LOANS AND SECURITY AGREEMENTS**

49.     Each of the Loans referenced in this case was originated by Tri Global Financial Services, Inc. ("Tri Global").

50.     Between July and August of 2012, Tri Global made one Loan to each Defendant in amounts ranging from $960,000 to $2,880,000.

51.     The exact date and original principal amount of each Loan is set forth on **Schedule 1** to this Complaint.

52.     Each Loan is evidenced by, among other documents, a note (each a "Note"; collectively, the "Notes").

53.     True and correct copies of the Notes are attached hereto as **Exhibits 1-31**, as more fully identified on **Schedule 1** to this Complaint.

54.     In connection with the Loans, each Defendant executed a Security Agreement.

55.     Pursuant to the Security Agreements, each Defendant pledged all or substantially all its assets, including its right, title, and interest in the Medallions identified on **Schedule 1** to this Complaint.

56.     True and correct copies of the Security Agreements are attached hereto as **Exhibits 32-62**, as more fully identified on **Schedule 1** to this Complaint.

57.     COTMF perfected its security interests in the Medallions by properly filing UCC financing statements.

**COTMF PURCHASES 100% PARTICIPATIONS IN THE LOANS AND TAKES OVER SERVICING AFTER DEFAULT**

58.     Contemporaneously with origination of the Loans, COTMF purchased a 100% senior participation interest in the Loans from Tri Global, pursuant to the terms of the Master

Joint Participation Agreement (the "MJPA"), dated August 2, 2010, to which Tri Global and COTMF are parties. A true and correct copy of the MJPA is attached as **Exhibit 63**.

59. Pursuant to the terms of the MJPA, Tri Global executed an assignment and transfer agreement (each, an "Assignment and Transfer Agreement"; collectively, the "Assignment and Transfer Agreements") with respect to each Loan, assigning and transferring all of Tri Global's rights in and to the subject Loan, including the collateral and Security Agreement, to COTMF.

60. In connection with each Loan, Tri Global also executed and delivered to COTMF a participation schedule (each a "Participation Schedule"; collectively, the "Participation Schedules" and together with the Assignment and Transfer Agreements, the "Transfer Documents").

61. True and correct copies of the Transfer Documents, except those relating to Jasmin Taxi, are attached hereto as **Exhibit 64.**

62. COTMF has not been able to locate an executed copy of the Transfer Documents related to the Jasmin Taxi Loan. Upon information and belief, Tri Global executed and delivered to COTMF Transfer Documents identical in form to each of the other Transfer Documents. Since the closing of the Jasmin Taxi Loan, Tri Global has acted in the same manner with respect to COTMF's interests in the Jasmin Taxi Loan as it has with all the other Loans.

63. Tri Global delivered the original Notes to COTMF and expressly authorized COTMF to indorse them.

64. Pursuant to the terms of the MJPA, Tri Global was to service the Loans and to collect payments from Defendants in connection with their respective Loans and remit payments to COTMF.

65.     Each Defendant defaulted (the "Maturity Defaults") under the terms of its Loan by failing to make the balloon payment of all or substantially all original principal and any accrued interest due at maturity on December 1, 2015.

66.     After the Maturity Defaults, COTMF properly exercised its right to terminate Tri Global's servicing of the Loans, and to succeed to all rights that Tri Global had with respect to enforcing the Loans, including the Security Agreements.

## THE COOK COUNTY ACTION, THE VENUE DECISION, AND COTMF'S DECISION TO COMMENCE THIS ACTION IN ILLINOIS

67.     Following Tri Global's failure to repurchase the defaulted Loans, COTMF, to mitigate its damages, commenced various litigations against the borrowers and guarantors of Tri Global-originated loans in which COTMF had purchased an interest.

68.     The Northern District of Illinois has entered final judgments in favor of COTMF in at least two such cases.  *See Capital One Equipment Finance Corp. v. Adela, Inc.*, Case No. 17-cv-0304 (N.D. Ill.) [ECF No. 94, Nov. 2, 2017 (decision granting summary judgment as to liability); ECF No. 106, February 20, 2018 (order granting damages for principal amounts due under loans and attorneys' fees); ECF No. 107, February 22, 2018 (order granting damages for accrued interest)]; *Capital One Equipment Finance Corp. v. Big 3 Taxi Corp.*, Case No. 17-cv-00234 (N.D. Ill.) [ECF No. 98, February 14, 2018 (decision granting summary judgment as to liability); ECF No. 134 (stipulated judgments)].

69.     As part of its mitigation and recovery efforts, on January 27, 2017, COTMF commenced litigation (the "Cook County Litigation") relating to certain of the Loans in the Circuit Court of Cook County, Illinois (the "Cook County Court"). *See Capital One Equipment Finance Corp. v. Chicago Elite Cab Corp.*, Case No. 2017-L-000998 (Ill Cir. Ct., Cook Cty).

37659335v10

70. The Cook County Litigation did not involve the Security Agreements or Collateral, but instead, solely sought to liquidate the principal plus interest and costs due under the terms of the Notes and guaranties to money judgments.

71. Instead of answering the complaint, defendants in the Cook County Litigation moved to dismiss the case (the "Venue Motion")—not on the merits—but, instead, arguing that New York was a preferable venue because there is litigation pending between COTMF and Tri Global, among other defendants, arising from Tri Global's alleged breach of the MJPA for failing to repurchase COTMF's interests in certain defaulted loans, including the Loans referenced in this case.

72. The Cook County Court initially denied the Venue Motion. But, on the defendants' motion to reconsider and over COTMF's objection, the Cook County Court entered an order dismissing the Cook County Litigation with leave to refile those claims in a New York Court (the "Venue Decision") on January 16, 2018.

73. This Court is the appropriate venue for this action because this action: (i) involves the BACP—a department of the City of Chicago; (ii) involves the application of a City of Chicago rule; and (iii) will affect the disposition of numerous City of Chicago taxi medallions. The mandatory Illinois venue and choice-of-law clauses in the loan documents and the fact that all Defendants are Illinois Corporations that do business solely in Illinois further support Illinois as the most appropriate venue.

74. Moreover, this action complies with the Venue Decision because it does not reassert the claims for money judgments asserted in the Cook County Litigation and, instead, seeks the court order required by Taxi Rule TX13.02(b) permitting the transfer of the foreclosed Medallions.

37659335v10

75.     Finally, because of the large number of Chicago medallions at issue in this case, COTMF believes that judicial economy is best served by naming the BACP as a nominal defendant in order to ensure that a judgment obtained in this case is acceptable to the BACP and to facilitate any relief granted by this Court.

## COTMF'S NON-JUDICIAL FORECLOSURE ON THE MEDALLIONS

76.     In August of 2018, COTMF further attempted to mitigate its damages by exercising its non-judicial rights under the Security Agreements and the Illinois UCC to conduct a public sale of the Medallions, which was held on August 9, 2018 (the "Foreclosure Auction").

77.     Pursuant to Section 7 of each Security Agreement, in the event of a maturity default, COTMF has "the right, in addition to and in connection with any other rights it may have under the Note, [the Security Agreement], the Uniform Commercial Code and otherwise . . . to sell, assign and deliver the Collateral at a public or private sale, for cash, on credit or future delivery, with or without advertisement of the time, place or terms of sale and in connection therewith to grant options and . . . [except in the case of a private sale] . . . all other demands, advertisements and notices being hereby waived."

78.     On July 13, 2018, COTMF sent notices to the Defendants and the BACP of Defendants' respective defaults and of COTMF's intent to foreclose on the Medallions at the Foreclosure Auction (each, a "Foreclosure Notice"; collectively, the "Foreclosure Notices") via Federal Express and certified mail.

79.     True and correct copies of the Foreclosure Notices are attached as **Exhibit 65** (exhibits to the Foreclosure Notices omitted).

80.    The Foreclosure Notices specified the date (August 9, 2018), time (10:30 a.m. Central Time), and location (Michigan II Room at One North Wacker Drive, Chicago, Illinois 60606) of the Foreclosure Auction.

81.    The Foreclosure Auction was also advertised in the *Chicago Sun Times* on July 25, 2018 (the "Publication Certification"). A true and correct copy of the Publication Certification is attached hereto as **Exhibit 66**.

82.    The Foreclosure Auction was attended by eighteen prospective bidders.

83.    At the Foreclosure Auction, COTMF announced its intent to credit bid the amount of $23,000 for each medallion.

84.    As an inducement to third-party bidders, COTMF offered to work with any prospective bidders regarding accrued taxes and fees relating to the Medallions of which the BACP would require payment before it would approve a transfer of the Medallions.

85.    This offer resulted in COTMF receiving higher bids from third parties for eight of the Medallions (the "Non-Credit-Bid Medallions), ranging from $23,100 to $23,500. The Non-Credit-Bid Medallions and the highest bids received are identified on **Schedule 2** of this Complaint.

86.    COTMF's credit bid of $23,000 was the highest bid received at the foreclosure sale for the remainder of the Medallions.

## DEFENDANTS SUBMIT THEIR AFFIDAVITS OF DEFENSE

87.    On August 16, 2018, COTMF sent a "Notice of Creditor's Request to Transfer Public Passenger Vehicle License Upon Foreclosure" (as defined in the Taxi Rules, collectively the "Rule 13.02 Notices") to each of the Defendants and the Commissioner of the BACP via both regular and certified mail.

37659335v10

88.     True and correct copies of the Rule 13.02 Notices are attached hereto as **Exhibit 67**.

89.     Pursuant to Taxi Rule TX 13.02, each Defendant filed an Affidavit of Defense asserting nearly identical purported defenses.

90.     True and correct copies of the Affidavits of Defense are attached as **Exhibit 68**.

91.     The Affidavits of Defense each attach a pleading-style "Defense Document" (the "Defense Documents"), containing factual allegations in a narrative form.  Though the Affidavit of Defense forms were signed and notarized, the Defense Documents are not.

92.     Even if all the factual statements contained in the Affidavits of Defense were true, those facts do not constitute grounds for denial of the order required by Taxi Rule TX13.02(b) approving transfer of the Medallions because COTMF has a superior possessory right in and to the Medallions pursuant to Section 7 of the Security Agreements.

**Defendants First Purported Defense**

93.     Defendants' first purported defense to foreclosure asserted in the Affidavits of Defense is premised on a promotional arrangement between Uber Technologies, Inc. ("Uber") and COTMF's corporate affiliate, which conducts a consumer credit card business.

94.     None of the loan documents contain any terms obligating COTMF or any of its affiliates to refrain from engaging in business with any other entities, including competitors of Defendants.

95.     The Loans are arms'-length commercial transactions and the relationship between COTMF and Defendants is purely contractual.

96.     There is, accordingly, no basis as a matter of law for Defendants' first alleged defense that the business relationship between COTMF's affiliate and Uber constitutes a defense to COTMF's foreclosure of the Medallions.

**Defendants' Second Purported Defense**

97.     Defendants' second purported defense to foreclosure asserted in the Affidavits of Defense is that they "do not owe the amount claimed by [COTMF] and ha[ve] not defaulted on the agreement at issue."

98.     The amount due under the Loans greatly exceeds the value of the collateral. Any disputes as to the precise amounts due under the Loans may affect the amount of the deficiency COTMF is entitled to collect but does not constitute a defense to foreclosure.

**Defendants' Third Purported Defense**

99.     Defendants' third purported defense to foreclosure asserted in the Affidavits of Defense is that COTMF's foreclosure violates the Taxi Rules because COTMF is not, itself, qualified under the Taxi Rules to own the Medallions.

100.    COTMF's alleged lack of qualifications under the Taxi Rules to own the Medallions does not serve as a defense to its ability as a secured creditor to transfer the Medallions to a purchaser through foreclosure. The BACP has approved the transfer of numerous taxi medallions to third parties arising from COTMF's prior foreclosure sales. COTMF may, as it has done with other medallions upon which it has foreclosed, assign its credit bids and the right to acquire the Medallions to third party purchasers.

**Defendants' Fourth Purported Defense**

101.    Defendants' fourth purported defense to foreclosure asserted in the Affidavits of Defense relates to COTMF's willingness to work with prospective bidders regarding certain

taxes and fees to induce third parties to bid on the Medallions and its willingness let bidders out of their contracts if an agreement on such taxes and fees could not be reached.

102.    COTMF's offer to work with prospective bidders on taxes and fees inured to Defendants' benefit as evidenced by the bids COTMF received that exceeded its credit bid on the eight Non-Credit-Bid Medallions. There is no requirement in the loan documents, the Taxi Rules, or the Illinois UCC that a foreclosing secured creditor enter into a binding contract with bidders. To the contrary, Section 7(d) of the Security Agreements expressly authorized COTMF to "grant options" with respect to the Medallions if it elected to sell them following a default under the Loans.

**Defendants' Fifth Purported Defense**

103.    Defendants' fifth purported defense to foreclosure asserted in the Affidavits of Defense is that COTMF violated fiduciary duties owed to Defendants.

104.    In support of the fifth alleged defense, Defendants, again rely on allegations concerning the business relationship between COTMF's affiliate and Uber.

105.    As set forth above, COTMF's relationship to defendants is a purely contractual creditor/debtor relationship. COTMF does not owe Defendants any fiduciary duties and, therefore, cannot have breached them.

**Defendants' Sixth Purported Defense**

106.    Defendants' sixth purported defense to foreclosure asserted in the Affidavits of Defense is that COTMF violated the covenant of good faith and fair dealing and, again, refers to the business dealings between Uber and COTMF's affiliate.

107.    Defendants received the full benefit of the Loans, namely the receipt and use of the tens of millions of dollars collectively loaned to them under the terms and conditions in the

37659335v10

loan documents. The loan documents contain no covenant—explicit or implied—requiring COTMF or any of its affiliates to refrain from pursuing their legitimate business interests with potential competitors to the Defendants.

**Defendants' Seventh Purported Defense**

108.    Defendants' seventh alleged defense to foreclosure asserted in the Affidavits of Defense is that COTMF is barred by the doctrine of estoppel, waiver, ratification or acquiescence.

109.    Defendants identify no facts supporting these bald legal conclusions, nor do they state how these doctrines would prevent the Court form entering the order required by Taxi Rule TX13.02(b) approving transfer of the Medallions.

## COUNT I – DECLARATORY JUDGMENT

110.    COTMF realleges and incorporates by reference Paragraphs 1–109 of this Complaint as though fully restated herein.

111.    The purported defenses asserted by the Defendants in their Affidavits of Defense do not constitute valid defenses to a transfer of the Medallions through foreclosure.

112.    The facts pleaded in this Complaint demonstrate COTMF's entitlement to enforce its rights under the Security Agreements.

113.    Under the terms of the Illinois UCC and the Security Agreements, COTMF was entitled to conduct a public sale of the Medallions following the Defendants' failure to repay the Loans at maturity.

114.    COTMF's foreclosure process, including but not limited to the Foreclosure Notices, the Publication Notice, and the conduct of the Foreclosure Auction complied in all ways

and was consistent with COTMF's rights under the Security Agreements, the Illinois UCC, and the Taxi Rules.

115.    Pursuant to Taxi Rule TX13.02(b), if the owner of a Medallion being foreclosed upon sends an Affidavit of Defense (as defined in the Taxi Rules) to the secured lender within the prescribed time period "no transfer upon foreclosure will be allowed without the subsequent express written consent of the debtor/medallion licensee except **pursuant to an order of a court having jurisdiction**." Taxi Rule TX13.02(b) (emphasis added).

116.    Because each of the Defendants has filed one or more Affidavits of Defense, COTMF cannot complete its transfer of the Medallions without a court order.

117.    COTMF's inability to complete its foreclosure of the Medallions because of Defendants' Affidavits of Defense presents an "actual controversy" pursuant to 28 U.S.C. § 2201(a).

118.    Pursuant to Rule 57 of the Federal Rules of Civil Procedure, COTMF respectfully requests a speedy hearing of this declaratory judgment action.

119.    COTMF is entitled to an order declaring that the purported defenses asserted by Defendants in the Affidavits of Defense are not valid defenses to a transfer of the Medallions pursuant to the Foreclosure Sale, that Defendants have no valid defenses to COTMF's foreclosure of the Medallions and are required to surrender them to the BACP, and that, subject to compliance with the Taxi Rules and the approval of the BACP, COTMF is entitled to effect a transfer of the Medallions as a result of its foreclosure on them.

## **PRAYER FOR RELIEF**

WHEREFORE, COTMF prays for entry of an order declaring that the purported defenses asserted by Defendants in the Affidavits of Defense are not valid defenses to transfer

37659335v10

of the Medallions through COTMF's foreclosure, that Defendants have no valid defenses to COTMF's foreclosure of the Medallions and are required to surrender them to the BACP, and that, subject to compliance with the Taxi Rules and the approval of the BACP, COTMF is entitled to effect a transfer of the Medallions as a result of its foreclosure on them.

Dated: March 14, 2019                           Respectfully submitted,

                                                CAPITAL ONE EQUIPMENT FINANCE
                                                CORP.

                                                By: /s/ *Robert E. Browne, Jr.*
                                                Robert E. Browne, Jr. (ARDC #6255678)
                                                Troutman Sanders LLP
                                                One North Wacker Drive, Suite 2905
                                                Chicago, Illinois 60601
                                                (312) 759-1920
                                                robert.browne@troutman.com

19

### Schedule 1—Loans

| Defendant Borrower | Origination Date | Principal Amount | Note Exhibit Numbers | Security Agreement Exhibit Numbers | Medallion Numbers |
|---|---|---|---|---|---|
| Bonus Taxi | August 21, 2012 | $1,200,000 | Exhibit 1 | Exhibit 32 | 2345, 1949, 1907, 1638, and 1632 |
| Chicago Polo I | July 30, 2012 | $1,440,000 | Exhibit 2 | Exhibit 33 | 1106, 2550, 6607, 6608, 6609, and 6610 |
| Chicago Polo II | July 30, 2012 | $1,440,000 | Exhibit 3 | Exhibit 34 | 6611, 6612, 6613, 6614, 6615 and 6616 |
| Chicago Polo III | July 30, 2012 | $1,440,000 | Exhibit 4 | Exhibit 35 | 6267, 6279, 6220, 6208, 5414, and 1128 |
| Chicago Polo IV | July 30, 2012 | $1,440.000 | Exhibit 5 | Exhibit 36 | 2848, 3454, 3678, 3700, 5795, and 6014 |
| Chicago Polo XII | August 21, 2012 | $960,000 | Exhibit 6 | Exhibit 37 | 1535, 1550, 1589, and 1599 |
| Dolfina Taxi | August 21, 2012 | $960,000 | Exhibit 7 | Exhibit 38 | 6461, 5756, 5313, and 2460 |
| Enetochka Taxi | August 21, 2012 | $960,000 | Exhibit 8 | Exhibit 39 | 3688, 2080, 2053, and 2027 |
| Funny Monica | August 30, 2012 | $960,000 | Exhibit 9 | Exhibit 40 | 195, 202, 198, and 203 |
| Galina Cab | August 30, 2012 | $1,440,000 | Exhibit 10 | Exhibit 41 | 5213, 5097, 2278, 5747, 5743, and 5946 |
| Gap Cab | August 28, 2012 | $1,440,000 | Exhibit 11 | Exhibit 42 | 1561, 1650, 2793, 3615, 4933, and 1716 |
| Green Tea | August 6, 2012 | $1,200,000 | Exhibit 12 | Exhibit 43 | 4923, 4935, 4936, 4946, and 4949 |
| Jasmin Taxi | August 30, 2012 | $960,000 | Exhibit 13 | Exhibit 44 | 2969, 2966, 2965, and 2963 |

37659335v10

| Defendant Borrower | Origination Date | Principal Amount | Note Exhibit Numbers | Security Agreement Exhibit Numbers | Medallion Numbers |
|---|---|---|---|---|---|
| June Cab | July 30, 2012 | $1,440,000 | Exhibit 14 | Exhibit 45 | 2645, 2775, 3027, 3403, 4439, and 5461 |
| Lucky Four Cab | July 30, 2012 | $960,000 | Exhibit 15 | Exhibit 46 | 859, 884, 911, and 995 |
| Lucky in Chicago | August 28, 2012 | $1,200,000 | Exhibit 16 | Exhibit 47 | 124, 139, 141, 175, and 286 |
| Magenta Zone | August 30, 2012 | $960,000 | Exhibit 17 | Exhibit 48 | 4071, 4121, 4137, and 4286 |
| Mauve Zone | August 30, 2012 | $1,200,000 | Exhibit 18 | Exhibit 49 | 1945, 4364, 4463, 4475, and 4528 |
| Misha Cab | August 28, 2012 | $960,000 | Exhibit 19 | Exhibit 50 | 4769, 4775, 4778, and 4782 |
| Monaco Taxi | August 21, 2012 | $1,200,000 | Exhibit 20 | Exhibit 51 | 4790, 4792, 4798, 4803, and 4818 |
| Moneta Taxi | August 21, 2012 | $960,000 | Exhibit 21 | Exhibit 52 | 1641, 2394, 2968, and 3006 |
| Pink Zone | August 30, 2012 | $960,000 | Exhibit 22 | Exhibit 53 | 3745, 3774, 3786 and 3840 |
| Pretty Rachel | August 30, 2012 | $960,000 | Exhibit 23 | Exhibit 54 | 213, 216, 218, and 221 |
| Princess Taxi | August 21, 2012 | $960,000 | Exhibit 24 | Exhibit 55 | 1207, 1189, 1174, and 1169 |
| Rachel Taxi | August 30, 2012 | $960,000 | Exhibit 25 | Exhibit 56 | 1291, 1273, 1262, and 1230 |
| Reservior II | July 30, 2012 | $1,200,000 | Exhibit 26 | Exhibit 57 | 1717, 1784, 1805, 1832, and 1849 |
| Samuel Taxi | July 30, 2012 | $1,440,000 | Exhibit 27 | Exhibit 58 | 1866, 1867, 1870, 1910, 1938, and 1951 |
| Shaun Jr. Taxi | August 17, 2012 | $1,440,000 | Exhibit 28 | Exhibit 59 | 5956, 5955, 5953, 2871, 1075, and 842 |

37659335v10

| Defendant Borrower | Origination Date | Principal Amount | Note Exhibit Numbers | Security Agreement Exhibit Numbers | Medallion Numbers |
|---|---|---|---|---|---|
| Siro | July 30, 2012 | $2,880,000 | Exhibit 29 | Exhibit 60 | 4764, 4114, 6318, 2273, 1793, 1491, 1275, 1164, 915, 6230, 6122, and 5625 |
| SLS Jet Cab | July 30, 2012 | $1,440,000 | Exhibit 30 | Exhibit 61 | 3421, 4029, 4537, 4656, 4705, and 2276 |
| Valex Cab | August 28, 2012 | $1,440,000 | Exhibit 31 | Exhibit 62 | 2149, 1970, 622, 1952, 1653, and 886 |

22

**Schedule 2—Bids Above COTMF's Credit Bid**

| DEFENDANT AND MEDALLION NO. | PURCHASE PRICE |
|---|---|
| Bonus Taxi Medallion 1632 | $23,100 |
| Chicago Polo I Medallion 6610 | $23,100 |
| Chicago Polo II Medallion 6616 | $23,100 |
| Chicago Polo III Medallion 6611 | $23,100 |
| Jasmin Taxi Medallion 2696 | $23,500 |
| Magenta Zone Medallion 4286 | $23,100 |
| Moneta Taxi Medallion 3006 | $23,100 |
| Valex Cab Medallion 2149 | $23,100 |

37659335v10