# EXHIBIT 63

## MASTER JOINT PARTICIPATION AGREEMENT

**AGREEMENT** made this 2nd day of August 20 10 , by and between TRI GLOBAL

FINANCIAL SERVICES, INC., an Illinois corporation with principal place of business at 2617

S. Wabush Ave., Chicago, IL 60616, hereinafter "Seller" or "TRI GLOBAL", and Capital One

Taxi Medallion Finance (a trade name of All Points Capital Corp.), with a place of business at

265 Broadhollow Road, Melville, New York 11747, hereinafter "COTMF" or "Participant".

**WHEREAS,** Seller has entered into or may hereafter from time to time enter into certain

secured financing agreements, each hereinafter referred to as, a "Loan", the "Loan" or "Loans",

with one or more borrowers (each, the "Borrower(s)"), pursuant to which Seller has made and/or

may hereinafter make Advances to Borrower; and

**WHEREAS,** COTMF and Seller desire to establish the terms by purchase and Seller is

agreeable to selling to COTMF a senior participation in Loans upon the terms and conditions set

forth below, and

**WHEREAS,** Guarantors have provided one or more guaranties respecting some or all of

the obligations of Seller to COTMF.

**NOW, THEREFORE,** in consideration of the mutual premises contained herein, it is

agreed as follows:

1.   **Definitions**

   (a)   "Advances" shall mean all loans, advances, guarantys, extensions of

credit, accommodations or any other extensions of credit made or to be made by Seller to or on

behalf of Borrower pursuant to the Agreements and all other items chargeable to Borrower's

account pursuant thereto.   Nothing contained herein shall obligate Participant to make any

Advances.

1

Tri Global Master JPA 05 25 10

(b)    "Agreements" shall mean the written documents between Seller and Borrower (and all related documents evidencing the Loan) as described in the Transfer Documents, copies of which will be delivered by Seller to Participant upon the purchase by COTMF of a participation in a Loan.

(c)    "Collateral" shall mean all Public Passenger Vehicle Licenses and Medallions, all other rights granted therein and related thereto issued by the City of Chicago to a Borrower pursuant to the City of Chicago Municipal Code and as regulated by the City of Chicago Department of Business Affairs and Consumer Protection ("BACP") or any other agencies or authorities as applicable authorizing Borrower to operate a taxi cab or cabs in Chicago, IL., and other property, security, interests, and/or other collateral received by Seller pursuant to the Agreements or otherwise acquired by Seller in connection with the Loan.

(d)    "Collections" shall mean all monies received by Seller of any kind or nature under the Agreements including, without limitation, as principal, interest, discount, bonus or commissions on account in whatever manner from whatever source or as proceeds of the Collateral or from any guarantor.

(e)    "Guarantor(s)" shall mean Roman Sapino, Symon V. Garber, Valentina Zubok, Galina Garber-Sheinin and Ruben Giacomozzi.

(f)    "Medallion Value" shall mean the value of Chicago taxi medallions securing the Advances made under a Loan, calculated by using the valuations published by the BACP on the BACP website or any other BACP authorized form of publication for individual and corporate medallions.  If published values are not available from the BACP, then the valuation shall be determined using methods reasonably selected by COTMF on notice to Seller.

(g)    "Minimum Medallion Value" shall be that amount set forth on Exh. "1"

2

for each applicable Loan.

(h)    "Participant's Investment" or "Participant Investment" shall mean Participant's initial contribution to purchase its participation in a Loan set forth in the Transfer Documents, receipt of which will be acknowledged by Seller in writing within two (2) business days of receipt thereof, plus all additional sums paid by Participant to Seller on account of its participation in a Loan.

(i)    "Participation Percentage" shall mean a percentage equal to Participant's undivided fractional interest in the Loan and the Agreements calculated by dividing the Participant's Investment by the original principal balance advanced by the Borrower to the underlying borrower in the Loan. The Participation Percentage shall be reflected in the Transfer Documents.

(j)    "Pre-Payment Fee" shall mean an amount equal to the greater of: (I) twenty-five (25%) percent of the amount of any pre-payment fee, penalty or premium actually paid or due (whichever is more) from Borrower under a Loan, or (II) one-quarter (.25%) of one percent of the unpaid amount of the Participant Investment together with interest accrued thereon.

(k)    "Short Interest" shall mean interest due under the Loan for the period from the closing date on a Loan through the tenth (10th) day of the month following such closing, at the Loan Interest Rate set forth on Exhibit "1".

(l)    "Transfer Documents" shall mean such documents substantially in the form annexed hereto as Exh. "1" and Exh. "2" and Schedule "B", together with necessary UCC financing statements and other documents of transfer necessary to identify, and to effect the transfer of, the Agreements in which COTMF is acquiring a participation, the Participant's

3

Investment, the Participation Percentage and such other terms to set forth the terms of the participation.

2. **Participation**

   Seller shall from time to time sell to COTMF and COTMF shall from time to time purchase from Seller, an undivided participation, in an amount equal to the Participation Percentage, of Seller's rights and interests in a Loan, the Collections, the Collateral and all rights and interests under the Agreements pursuant to the Transfer Documents. The Participation Percentage of COTMF in each Loan, Collections, Collateral and Agreements shall be a senior undivided interest and shall be prior in all respects to that of Seller and Seller's interest shall be subordinate to COTMF's interest in the Loan. The form of Participation Schedule to be executed for each Loan in which COTMF acquires a participation therein is annexed as Ex. "1" hereto. The form of Assignment and Transfer of the Participation Percentage in a Loan is annexed as Exh. "2" and together with Exh. "1" and such other documents executed in connection therewith shall be the Transfer Documents.

3. **Distribution of Payments**

   (a)  COTMF shall earn interest on the Participant's Investment at the Seller Interest Rate  identified on Exh. "1", calculated based upon a 30 day month and a 360 day year ("Participant Interest Rate").

   (b)  On the tenth (10th) day of each and every month in which there remains due to COTMF any payments or other obligations under a Loan, Seller shall in connection with its receipt of funds from Borrower, whether representing a monthly payment(s), a portion thereof or any other payment from the Borrower, tender to COTMF the Participant's Percentage of the amount so received or applied, and shall pay the Monthly Payment due COTMF as reflected on

4

Exh. "1" for each Loan. Participant shall apply such payments first to interest at the Participant Interest Rate, then to principal in reduction of the Participant's Investment and then to any fee and charges to which Participant is entitled. If the Participation Percentage is 100%, then Seller shall, provided it is not in default hereunder, be authorized to withhold from any payment to be sent to Participant an amount representing interest, in an amount equal to the difference between (a) the interest rate charged on the Loan, and (b) the Participant's Interest Rate. Until any payment owing to Participant is paid over, Seller shall be deemed holding any payment as Participant's agent.

The payment due to COTMF shall be paid (in the amount set forth on the summary schedule as the "Monthly Payment due COTMF"), subject to the terms and conditions herein contained including COTMF's rights upon the occurrence of a default hereunder, including without limitation, COTMF's rights upon Borrower's failure to make any payment, within ten (10) days of payment due date (ie., the 10th day of the month) set forth in the Borrower's Promissory Note executed and delivered to Seller in connection with the Loan. At COTMF's request, Seller shall establish either ACH or automatic debit for its payments due hereunder.

The Monthly Payment due COTMF as reflected on Exh. "1" shall be made by automatic debt from an account maintained by Seller for such purpose at Capital One Bank in which Tri Global shall maintains balances sufficient to pay such Monthly Payment due COTMF as reflected on Exh. "1". Each such payment shall be automatically deducted from Capital One Bank Account No. 3514003387 in connection with this Agreement on the tenth (10th) day of each and every month that a Loan remains outstanding and Seller hereby agrees to maintain sufficient funds in said account to cover these payments. Seller agrees that should there be

5

Tri Global Master JPA 05 25 10

insufficient funds in said account on the tenth (10th) day of each month, an overdraft charge will be incurred and the account will be charged for the payment. However, if this occurs, Seller will remain responsible for the payment, plus any overdraft and/or standard COTMF late charges, and Seller will be in default hereunder. In the event that the money maintained in such account is insufficient for any payment due under this Agreement, COTMF may charge any account of Seller or Guarantors for any payment due to COTMF under this Agreement.

      (c)     Provided Seller is not in default hereunder, then notwithstanding the foregoing subpar. (b), Seller may, at its sole option and without any obligation on its part, make payments to COTMF whether or not the Borrower (as defined in the Agreements) has made such payments to Seller In the event Seller does make payments to COTMF where the Borrower has not made timely payments to Seller, Seller shall notify COTMF in writing that it is making payments on the Borrower's behalf, specify the payment(s) not made by Borrower and any default(s) existing under the Loan, and advise Participant of the actions being taken to address any default under the Loan. In consideration thereof, Seller shall be entitled to retain any late charge or default interest rate pertaining to each monthly payment or payments it makes on a Borrower's behalf. COTMF shall not be entitled to any late charge or default rate of interest provided Seller shall have timely paid the Monthly Payment due COTMF is reflected on Exh. "1", to COTMF each month, subject to the limitations above, irrespective of whether Borrower is required to pay same to Seller In the event Seller elects not to advance payments to COTMF where the Borrower has failed to make timely payments to it, COTMF shall be entitled to share, to the extent of its Participation Percentage, in the applicable late charges and default interest accruing therefrom. Further, in the event Seller advances monies in a given month to COTMF where a Borrower has not made timely payments, and the Borrower makes payment in such

6

month to Seller at a later time, Seller shall, provided Seller is not in default hereunder, from such payments made by Borrower, first be paid all additional amounts which it has advanced to COTMF during such month.

(d)    Interest Only Loans.    For any Loan where the payment terms to the Borrower provide for interest only payments, Exh. "1" will reflect those terms, all applicable provisions related to interest only Loans on Exh. "1" will be completed and the Agreements will provide for the commencement of principal amortization of the Loan prior to the Loan Maturity Date, according to the terms of Exh. "1", if the Medallion Value falls below the Minimum Medallion Value.

(e)    Amortization of Interest Only Loans.    In the event the Medallion Value falls below the Minimum Medallion Value as set forth on Exh. "1" for any Loan, then immediately upon such publication Seller will provide notice to Borrower that the Monthly Loan Payment from Borrower (as set forth in Exh. "1") will be modified commencing on the due date for the Monthly Loan Payment that next comes due after publication by the BACP of the Medallion Value below the Minimum Medallion Value, by requiring the Borrower to thereafter make to Seller (and Seller correspondingly make to COTMF) payments of principal and interest based on a 25 year amortization schedule.    In the event of such conversion, the Loan shall nonetheless mature on the Loan Maturity Date set forth on the applicable Exh. "1" on which date Borrower shall be obligated to tender to Seller (and Seller shall pay to COTMF) the remaining unpaid principal balance of Participant's Investment together with all accrued interest thereon and all other amounts due COTMF hereunder.

4.    **Priority of Payments**

(a)    The priority of payments received from Borrower with respect to a Loan,

7

Tri Global Master JPA 05 25 10

prior to a default by the Borrower and prior to Seller taking possession of any Collateral pertaining to a Loan, shall be in the following order:

        i.     COTMF's Participation Percentage of interest payments due to date of payment;

        ii.    COTMF's Participation Percentage of principal payments due to date of payment;

        iii.   Late charges due COTMF, if any;

        iv.   Costs, expenses, or fees (including attorney's fees) incurred by COTMF in connection with the Loan, the Transfer Documents or this Master Joint Participation Agreement or the enforcement of any of the foregoing or protection of the Collateral;

        v.    Seller's Participation Interest in interest payments due to date of payment;

        vi.   Seller's Participation Interest in principal payments due to date of payment; and

        vii.  Late charges due Seller, if any.

    (b)    In the event of a default under a Loan whether or not Seller is taking possession of any Collateral pertaining to a Loan, the priority of payment shall be in the following order:

        i.     COTMF shall be paid all additional amounts which it has incurred for costs, expenses, or fees (including attorney's fees) incurred by COTMF in connection with the Loan, the Transfer Documents or this Master Joint Participation Agreement or the enforcement of any of the foregoing or protection of the Collateral;

        ii.    COTMF in repayment of such accrued and unpaid interest as may be due under the Loan to the extent of its Participation Percentage in such Loan, to the date of such payment;

        iii.   COTMF in repayment of the then existing balance of Participant's Investment in such Loan;

        iv.   Seller in repayment of such accrued and unpaid interest reflecting its participation in such Loan, in any;

8

          v.      Seller in repayment of such principal indebtedness reflecting its participation in such Loan, if any;

          vi.      Seller reimbursing it for all additional amounts which it has advanced, including monies previously advanced to COTMF where the Borrower has failed to make payments to Seller, and expenses reasonably incurred by Seller in connection with the enforcement of the Agreements and/or protection of the Collateral and the secured position therein; and

          vii.     Any remaining amounts shall be paid to Participant and Seller, in repayment of default interest, late charges and the like, to the extent described in Par. 3(c) hereof.

     (c)     COTMF shall be paid a pre-payment fee, premium or penalty in the event Borrower seeks to prepay (or defaults under) a Loan or Seller seeks to prepay the Participant Investment in an amount equal to the Pre-Payment Fee. Should Seller be in default as of the date of pre-payment, the pre-payment fee, premium or penalty shall be paid first to COTMF, to the extent of its Participation Percentage and the balance, if any, to Seller as long as COTMF has received payment in full under 4(a) or 4(b) above. Seller may not waive any pre-payment fee, premium or penalty unless it pays COTMF its share thereof in the amounts set forth in this subpar. 4(c).

    5.    **Procedure**

     (a)     All of the Agreements shall remain in the name of Seller as payee, obligee, or otherwise and Seller shall hold same in its possession as trustee and agent for the benefit of COTMF to the extent of its participation. Seller shall not apply any amount received from or on behalf of Borrower to any obligation other than a Loan. Seller shall cause a legend to be placed upon any each note given by an underlying Borrower to Seller in connection with the Loan in form annexed as Schedule "B" hereto evidencing COTMF'S interest in the Loan and execute an allonge endorsing the note under the Loan to COTMF. In addition, Seller shall add an assignment provision to the UCC-1 financing statement indicating an assignment by Seller as

9

secured party of the Participation Percentage of each Loan to COTMF.

       (b)    Seller will keep accurate records of all Advances, Collateral, and Collections apart from its records of the other assets, appropriately marked to show the interest of COTMF therein. In recording Seller's ownership of a Loan on its books and in statements of condition and assets, Seller shall clearly define COTMF's interest in each Loan and Collateral. COTMF or its designees may inspect any Loan and Collateral upon reasonable notice during normal business hours. Seller will furnish to COTMF, or make available for COTMF's audit, upon reasonably request, such information it may have concerning the Agreements, the performance thereof, and/or the financial condition and operation of Seller or any Borrower. Seller shall comply with all applicable regulations of the City of Chicago relating to perfecting of security interests in the subject Chicago taxicab medallions and appertaining licenses and license subscriptions (sometimes know as "taxi medallions" or "taxi licenses") and the assignment of such security interest(s) (specifically to COTMF as contemplated hereunder) as specified in the Rules and Regulations for Public Passenger Vehicle License Holders promulgated by the Department of Business Affairs and Consumer Protection, Public Vehicle Operations Division, including, without limitation, Rule No. 24.2(c) thereof.

       (c)    Seller will deliver statements to COTMF within ten (10) days of the first of each month showing the status of each Loan. The parties shall promptly adjust any accounting for sums actually due to Participant as compared to the amounts actually received by Participant. In addition, Seller shall supply COTMF, upon written request with (i) a trial balance sheet showing the outstanding balance on any Loan and COTMF's Participation Percentage in the Loan; and (ii) a delinquency report listing all loans originated by Seller in which COTMF has a participation interest; and (iii) cash receipts journal.

(d)     All Collections received by Seller in connection with each Loan shall be applied to the applicable Borrower's account with Seller as provided in the Agreements and thereafter paid to COTMF and Seller as set forth herein.  The payment of Short Interest shall be paid to COTMF together with the first Monthly Payment due COTMF.  The first Monthly Payment due COTMF shall be due on the tenth (10th) day of the month following the passage of the first full calendar month after closing of a Loan.

(e)     Seller shall bear all costs and expenses of managing and servicing the Loan and shall reimburse COTMF for all expenses (including reasonable attorneys' fees) that COTMF incurs in connection with a Loan, this Agreement or the enforcement of either of them.

(f)     Seller shall have the right to purchase COTMF's interest in any Loan by giving COTMF thirty (30) days written notice of its intent to purchase and upon payment of the Participant's Investment, plus any interest accrued thereon (to date of payment), cost, expenses and fees (including attorneys' fees) due, late charges and the Pre-Payment Fee.  COTMF shall thereafter release and assign its participation in such Loan to Seller.

(g)     Seller and COTMF each agree to treat the sale to COTMF of a participation in each Loan as a true sale on their respective books and records.  COTMF shall be authorized to file a UCC-1 financing statement against Seller reflecting the transaction contemplated by this Joint Participation Agreement.

(h)     At all times Tri Global shall maintain a Participation Percentage in any Loan of no less than 1%.

6.     **Management**

(a)     Provided it is not in default hereunder, Seller shall have the right and obligation to manage, perform, and enforce the terms of the Agreements and to exercise all

11

privileges and rights exercisable or enforceable thereunder, according to Seller's customary procedures with similar borrowers and in the exercise of its prudent business judgment. Should Seller default hereunder, or in connection with the Transfer Documents, then after notice from COTMF, all of Seller's rights hereunder (including under this par. 6(a)) shall be terminated with respect to, at COTMF's option, all Loans in which COTMF has acquired a Participation Percentage hereunder and Participant shall have all of the rights, powers and privileges (but none of the obligations) of Seller under each Loan and such Loan(s) shall be deemed fully assigned to COTMF.

(b)     Seller shall not, without the prior written consent of COTMF, (i) modify or amend any provision of the Agreements or waive or release any mutual rights thereunder, (ii) make any Advances (other then specified herein) under a Loan, or (iii) alter or change the Participation Percentage.

(c)     COTMF shall have no obligation to make any payment to Seller under Paragraph 5(c) to the extent that Seller has made Advances in excess of the maximum amount permitted herein and available under the Agreements.

(d)     Seller shall use reasonable prudence and judgment in the servicing of each Loan, carrying out of the terms of the Agreements, and the collection of amounts due from each Borrower, which servicing shall include delivering copies of all documents and reports obtained by Seller relating to the Borrowers, any guarantors and Collateral. Seller agrees, in servicing a Loan, to conform to applicable regulations and laws and to enforce such Agreements in a commercially reasonable manner.

(e)     Seller shall not hypothecate, pledge, assign, or otherwise encumber any of its rights, obligations, or interests under any Loan (except as provided herein to Participant).

12

Tri Global Master JPA 05 25 10

Further, Seller cannot prepay (whether voluntarily or involuntarily by virtue of its default)COTMF's Participation Investment without the prior written consent of COTMF, which consent may be unreasonably withheld at the sole and absolute discretion of COTMF unless together with such pre-payment Seller pays or causes to be paid to COTMF: the Participant's Investment, plus any interest accrued thereon (to date of payment), cost, expenses and fees (including attorneys' fees) due, late charges and the Pre-Payment Fee. COTMF shall thereafter release and assign its participation in such Loan to Seller. If the underlying Borrowers seeks to refinance or pre-pay his loan obligation with Seller in which COTMF has a loan participation interest, that shall be deemed a request by Seller to pre-pay the Participation Investment under this par. 6(e). Seller must offer COTMF in writing a right to participate any new loan if the Borrower seeks to refinance the Loan upon terms reasonably similar either to the underlying Loan or on terms consistent with those prevalent in the New York City taxi medallion financing market at that time.

(f)     COTMF may sell, pledge, assign, or sub-participate or otherwise transfer any or all of its rights in a Loan to any of its subsidiaries or to any non-independent third party without the prior written consent of Seller COTMF may sell, pledge, assign, or sub-participate or otherwise transfer any or all of its rights in a Loan to any other third party entity on the condition that it first provide Seller, at least ten (10) days prior to the contemplated closing of any such transaction, written details of the subject transaction including, without limitation, the name of the prospective purchasing entity and the terms of the transaction and, in conjunction therewith, Seller, provided it is not in default hereunder, shall have a right of first refusal with regard to such transaction. In the event Seller desires to exercise such right of first refusal, it shall notify COTMF, in writing, so as to be received prior to the expiration of the aforestated ten (10) day

13

period, of its intention to exercise such right and shall consummate the transaction within fifteen (15) days of the date of such notice. In the event Seller fails to timely notify COTMF of its intention to exercise its right of first refusal hereunder, or in the event Seller fails to timely consummate the subject transaction within the time parameters set forth in this sub-paragraph, Seller shall have been deemed to have waived its rights of first refusal under this sub-paragraph.

(g)     The parties acknowledge that Seller will receive compensation for its services and management hereunder, interest payments from the Borrower at the Loan Interest Rate set forth on the notes which rate, as indicated on Exh. "1" hereto, is higher than the interest rate payable to COTMF hereunder.

7.     **Representations and Warranties.** Seller hereby represents and warrants that:

(a)     It shall deliver to COTMF the originals of the Agreements as part of the Transfer Documents.

(b)     It has the right and authority to enter into this Master Joint Participation Agreement as of the date hereof.

(c)     COTMF will receive its Participation Percentage in each Loan free and clear of all liens and encumbrances (except for security interests held by Seller and COTMF), that as of the date of the execution of the Assignment and Transfer the outstanding principal balance of the Loan will be as reflected on Exh. "1" executed as part of the Transfer Documents, and Borrower will not be in default under the Agreements as of the date the Assignment and Transfer (Exh. "2") is executed.

(d)     Each Loan is a legal, binding and enforceable obligation of Borrower and Seller, and duly executed by all parties.

(e)     Seller maintains a perfected first security interest in the Collateral, except

14

Tri Global Master JPA 05 25 10

as limited by bankruptcy laws and limitations on equitable remedies generally, and that COTMF may purchase its interest of each Loan without necessity of registration under the securities laws.

      (f)     It is in compliance with all laws and regulations by which it is bound.

      (g)     Except as expressly set forth in this Master Agreement and the documents delivered in connection herewith, no party makes any express or implied representation or warranty with respect to any Loan, the collectibility of the indebtedness evidenced by any Loan, the credit worthiness of the Borrower, or the value of the Collateral.

8.    **Borrower Default**

      (a)     <u>Initial 30 Days</u>.  If a Borrower remains in default under a Loan for thirty (30) days, then within three (3) business days thereafter (or immediately if the default is not capable of being cured within 30 days), Seller will give COTMF written notice of such default and simultaneously deliver copies to COTMF of any written notice given to such Borrower.

      (b)     <u>Seller's Rights to Enforce</u>.  In furtherance of Seller's obligation to manage each Loan pursuant to par. 6 hereof, Seller shall prosecute and otherwise enforce the rights and remedies against the Borrower and Collateral should a default occur under a Loan, provided, however, that COTMF shall be entitled to terminate Seller's right to prosecute and otherwise enforce the rights and remedies against the Borrower under a Loan if:  (i) Seller has not exercised its rights to make all defaulted payments on Borrower's behalf pursuant to par. 3(c) above, or (ii) COTMF reasonably believes that the exercise of the rights and remedies by Seller against the Borrower is not in COTMF's best interests.  Should the conditions in this subpar. 8(b)(i) or (ii) occur, then COTMF shall have all the rights and remedies under par. 9(d) of this Agreement as if Seller was in default.

      (c)     <u>Borrower's Default In Payment Between 31 - 150 Days</u>.  Provided Seller is

15

in compliance with par. 8(b) above, then in the event of a default by a Borrower: (i) which remains uncured for seventy five (75) days (or immediately if the default is not capable of being cured within 75 days) from the due date, it shall endeavor to commence appropriate legal proceedings against the subject Borrower (such proceedings to be as reasonably requested by COTMF, if so requested) which may include foreclosing on the Collateral, (ii) in the event such default remains uncured for a period of one hundred twenty (120) days (or immediately if the default is not capable of being cured within 120 days) from the due date, Seller must commence appropriate legal proceedings against Borrower (such proceedings to be as reasonably requested by COTMF, if so requested) unless COTMF has previously instructed, in writing, that Seller enter into a forbearance with the Borrower, take other action or otherwise proceed regarding a Loan, and (iii) which remains uncured for one-hundred fifty (150) days (or immediately if the default is not capable of being cured within 150 days) from the due date, then within 5 days of written demand therefor, Seller shall repurchase from COTMF the unpaid portion of Participant's Investment with all accrued interest and other fees and charges due to COTMF under Loan and from the Seller and any prepayment fee due under the Loan shall be deemed due and payable to COTMF.

(d) <u>Rights On Borrower's Default</u>. In the event Seller fails for any reason to enforce the Agreements pertaining to such Loan, should Seller be in default hereunder, or should it fail to repurchase a Loan pursuant to par. 8 (c)(iii), then COTMF shall have the right, in addition to any other rights it may have pursuant to the terms of both the Agreements and this Master Agreement, or at law or equity, on fifteen (15) days prior written notice to Seller, to take whatever steps, consistent with par. 6 hereof, it deems necessary and appropriate to protect its participation in a Loan. Upon receipt of such notice, Seller shall promptly deliver to COTMF (to

16

the extent not previously delivered) such Agreements, including, but not limited to, notes and security agreements and other Agreements and records relating to the applicable Loan, together with all necessary and proper assignments and documents of authority, that COTMF may request for the purpose of protecting its participation. Seller shall execute the Assignment and Transfer in the form annexed as Exh. "2" which COTMF shall hold subject to its right to enforce the Assignment and Transfer consistent with the terms of this par. 8(d) and par. 9(d) hereof.

     9.    **General**

       (a)    <u>Notice</u>. All notices provided for herein shall be in writing and either hand-delivered, faxed or sent via nationally recognized overnight courier to the respective parties at the addresses first set forth above, or at such other addresses as either of them shall have specified to the other in writing. Fax No. for Participant (631) 577-2841. Fax No. for Seller (212) 947-7508.

       (b)    <u>Misc</u>. This Master Joint Participation Agreement: (i) shall be binding upon and inure to the benefit of the parties hereunder and their respective legal representatives, successors and assigns; (ii) shall be governed, construed, and interpreted in all respects in accordance with the laws of the State of New York without regard to conflicts of laws rules; (iii) may not be modified, amended, terminated or otherwise changed orally or by any course of dealing or in any manner except by an agreement in writing signed by the duly authorized officer of the party to be charged; and (iv) shall not create a partnership or joint venture.

       (c)    <u>No Loan</u>. The entering into of this Agreement shall not be construed as a loan by either party to the other.

       (d)    <u>Remedies</u>. In the event (i) of any default by Seller of its obligations hereunder, under a Loan or under any other agreement between Seller and Participant, including

17

Tri Global Master JPA 05 25 10

the failure to make any payment due, or (ii) of a filing by Seller or Guarantor of a petition under any provision of the bankruptcy laws or of an assignment for the benefit of creditors, or (iii) of the filing against Seller or Guarantor of a petition under any bankruptcy law or appointment of a receiver over its assets that is not dismissed within sixty (60) days, or (iv) of the sale of the shares in Seller and/or its assets out of the ordinary course of Seller's business, or (v) any judgment is entered against Seller, or (vi) of the failure by Seller to perform any covenant, condition or agreement contained herein which failure contains for more than 20 days after written notice, or (vii) any written representation or warranty of Seller is false in any material respect, or (viii) the death of a Guarantor; then COTMF shall have the right (but not the obligation) to succeed, at its option without further notice other than as required herein, to direct all payments under the Loan be made directly to COTMF and to all rights that Seller may have regarding the holding and enforcing of the terms of the Agreements and the servicing of the Loan, and COTMF shall have the right (but not the obligation) to exercise all of the powers granted to COTMF under each Assignment and Transfer and under this Agreement to Seller and shall have the option to designate itself to exercise such powers in a manner consistent with this Agreement. If COTMF so designates itself to exercise such powers in a manner consistent with this Agreement and notifies Seller of such designation, Seller shall promptly deliver to COTMF (to the extent not previously delivered) all Agreements, including the notes, security agreements and all other documents and records relating to each Loan, together with all necessary and proper assignments and documents of authority as provided in par. 8(d) hereof and COTMF shall also be entitled to receive from Seller its reasonable expenses incurred (including reasonable attorneys' fees) and disbursements made by it or its designee in holding or enforcing the terms of the Agreements or servicing each Loan.  In the event of a default by Seller hereunder beyond any

18

applicable cure or grace period, COTMF may increase the Seller Interest Rate by 5% per annum effective as of the date of default. A default by Seller hereunder or under any Loan shall, at COTMF's option, constitute a default by Seller of all of its obligation to COTMF enabling COTMF to exercise its remedies hereunder with respect to all Loans in which it has acquired a Participation Percentage from Seller.

      (e)    <u>Reporting Requirements</u>.

Seller and each Guarantor shall furnish to COTMF:

      (i)    annual signed federal tax returns (together with all schedules annexed thereto) of Tri Global within thirty (30) days of filing; and

      (ii)    accountant prepared semi-annual financial statements for Tri Global within forty-five (45) days of June 30 and January 31 of each year during the term hereof; and

      (iii)    annual signed federal tax returns (together with all schedules annexed thereto) of all Guarantors for this Agreement within thirty (30) days of filing; and

      (iv)    personal financial Statements for each Guarantor and all other guarantors for this Agreement to be submitted with the tax returns required by subparagraph (ii) hereof; and

      (v)    such other information respecting the conditions or operations, financial or otherwise, of Seller as COTMF may from time to time reasonably request. The foregoing shall be prepared in accordance with generally accepted accounting principles, consistently applied.

      (f)    Each of the parties hereby expressly submits and consents in advance to the jurisdiction of the Supreme Court of the State of New York in the County of Nassau in any

19

action or proceeding commenced by the other in such court with reference to any claim or dispute between the parties pertaining directly or indirectly to this Agreement or to any matter arising therefrom. EACH OF THE PARTIES HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____

Name: _Roman Scpino_

Title: _President._

CAPITAL ONE TAXI MEDALLION FINANCE (A TRADE NAME OF ALL POINTS CAPITAL CORP.)

By: _____

Name: _John Cetta_

Title: _VICE - PRESIDENT_

20

## Schedule A

Summary Description of Agreements Constituting Each Loan

1.    Promissory Note between Seller and Borrower.

2.    Security Agreement between Seller and Borrower

3.    Describe other loan documents.

4.    Identify Guaranties.

5.    Identify other collateral or pledge agreements.

6.    Identify UCC-1 filings.

## Schedule B

(sample)

Legend:  A participation interest in this Note has been
sold to Capital One Taxi Medallion Finance.  Negotiation of this Note
may not occur without the consent of Capital One Taxi Medallion Finance.

Form of Allonge