# EXHIBIT 64

## EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: *BONUS TAXI INC* | Name of Guarantor(s): *Symon Garber Chicago Elite Cab Corp* |
| Loan Amount to Borrower: $ *1200 000.00* | Loan Maturity Date: *September 10, 2013* |
| Participant's Investment: $ *1200000.00* | Participant Percentage: *100*% |
| Loan Interest Rate: *3.75*% | Seller Interest Rate: *3.49*% (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ *3750.00* from Borrower Interest Only: ✓ Yes ____(No) (check one) if interest only: Minimum Medallion Value $ _____ | Term of Loan in months: *36* Amortization period if different than Term *Interest Only* |
| Monthly Payment due COTMF $ *3490.00* | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____
Name: *DANIELLA ITIN*
Title: *VP*
Date: *AUGUST 21, 2012*

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: *Salvatore Chierico*
Title: *VP*
Date: *8 21-12*

EXH. "2"

ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this _21_ day of _August, 2012_ .

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: _V.P._
Address: _2617 S. Wabash Ave Chicago Il 60616_
Date: _8  21  12_

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.     **Seller Interest Rate**.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein).  The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.   **Fixed Rate Conversion**.  At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.   **Entire Understanding**.  Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.   **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: _DANIELLA ITIN_
Title: _V.P._
Date: _8, 21, 12_

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _Salvatore Chierico_
Title: _V.P._
Date: _8.21.12_

173996v1

Amendment No. 1 made this ____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1.  Participation Schedule.  Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.  Participation Percentage.  The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3.  ACH Payments:  The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4.  Full Force and Effect.  Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized

terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES,
INC.

By: _____
Name: _DANIELLA ETIN_____
Title: _V. P._____
Date: _8. 21. 12_____

CAPITAL ONE TAXI MEDALLION
FINANCE

By: _____
Name: _Salvatore Chierico_____
Title: _VP_____
Date: _8-21-12_____

## EXH. "1"

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC. ("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower: <br> *CHICAGO POLO I INC* | Name of Guarantor(s): <br> *SYMON GARBER* |
| Loan Amount to Borrower: $ *1440 000.00* | Loan Maturity Date: *AUGUST 10, 2015* |
| Participant's Investment: $ *1440 000.00* | Participant Percentage: *100*% |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate) <br> ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ *4500.00* from Borrower <br> Interest Only: ✓ Yes _____ (No) (check one) <br> if interest only: Minimum Medallion Value <br> $ _____ | Term of Loan in months: *36* <br> Amortization period if different than Term <br> *Interest Only* |
| Monthly Payment due COTMF <br><br> $ *4188.00* | Other Terms: _____ <br> _____ <br> _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

| | |
|---|---|
| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
| By: _____ | By: _____ |
| Name: *DANIELLA ITIN* | Name: _____ |
| Title: *V.P.* | Title: _____ |
| Date: *7 30 12* | Date: _____ |

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this __30__ day of __July__, __2012__.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: __VP__
Address: __2617 S. WABASH AVE CHICAGO__
Date: __7.30.12__     __IL 60616__

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.      **Seller Interest Rate**.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein).  The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _signature_
Name: DANIELLA ITIN
Title: VP
Date: 7.30.12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

173996v1

Amendment No. 1 made this ____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: VP | Title: _____ |
| Date: 7.30.12 | Date: _____ |

## EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: *CHICAGO POLO II INC* | Name of Guarantor(s): *SYMON GARBER* |
| Loan Amount to Borrower: $ *1440 000.00* | Loan Maturity Date: *AUGUST 10, 2015* |
| Participant's Investment: $ *1440 000.00* | Participant Percentage: *100*% |
| Loan Interest Rate: *3.75*% | Seller Interest Rate: *3.49*% (if fixed rate)  ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ *4500.00* from Borrower  Interest Only: ✓ Yes ___ (No) (check one)  if interest only: Minimum Medallion Value  $ ___ | Term of Loan in months: *36*  Amortization period if different than Term  *Interest Only* |
| Monthly Payment due COTMF  $ *4188.00* | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL                    CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____                  By: _____
Name: *DANIELLA ITIN*                  Name: _____
Title: *V.P.*                          Title: _____
Date: *7 30 12*                        Date: _____

<u>EXH. "2"</u>

<u>ASSIGNMENT & TRANSFER</u>

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on <u>Ex. "1"</u>. We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of July , 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)
By: _____
Title: SVP
Address: 2617 S. WABASH AVE CHICAGO
Date: 7.30.12       IL 60616

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    <u>Seller Interest Rate</u>. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.    **Fixed Rate Conversion.** At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.    **Entire Understanding.** Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.    **Pre-Payment Fee.** COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: | By: |
| Name: DANIELLA ITIN | Name: |
| Title: VP | Title: |
| Date: 7.30.12 | Date: |

173996v1

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1.    Participation Schedule.  Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.    Participation Percentage.  The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3.    ACH Payments:  The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4.    Full Force and Effect.  Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: _DANIELLA ITIN_____ | Name: _____ |
| Title: _VP_____ | Title: _____ |
| Date: _7.30.12_____ | Date: _____ |

## EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower:<br>*CHICAGO POLO III INC* | Name of Guarantor(s):<br>*SYMON GARBER* |
| Loan Amount to Borrower: $ *1440 000 00* | Loan Maturity Date: *AUGUST 10, 2015* |
| Participant's Investment: $ *1440 000.00* | Participant Percentage: *100*% |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate)<br>✓ check here if variable rate and complete<br>variable rate addendum |
| Monthly Loan Payment: $ *4500.00* from Borrower<br>Interest Only: ✓ Yes ____(No) (check one)<br>if interest only: Minimum Medallion Value<br>$ _____ | Term of Loan in months: *36*<br>Amortization period if different than Term<br>*Interest Only* |
| Monthly Payment due COTMF<br>$ *4188.00* | Other Terms:_____<br>_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: *DANIELLA ITIN* | Name: _____ |
| Title: *V.P.* | Title: _____ |
| Date: *7 30 12* | Date: _____ |

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of July , 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: VP
Address: 2617 S. WABASH AVE CHICAGO
Date: 7.30.12          IL 60616

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    **Seller Interest Rate**.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein).  The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.      **Fixed Rate Conversion**.  At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.      **Entire Understanding**.  Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.      **Pre-Payment Fee**.  COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: VP | Title: _____ |
| Date: 7.30.12 | Date: _____ |

173996v1

**Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".**

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1.     <u>Participation Schedule</u>.  Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.     <u>Participation Percentage</u>.  The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3.     <u>ACH Payments</u>:  The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4.     <u>Full Force and Effect</u>.  Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: _DANIELLA ITIN_ | Name: _____ |
| Title: _VP_ | Title: _____ |
| Date: _7.30.12_ | Date: _____ |

## EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower:<br>CHICAGO POLO IV INC | Name of Guarantor(s):<br>SYMON GARBER |
| Loan Amount to Borrower: $ *1440 000 00* | Loan Maturity Date: *AUGUST 10, 2015* |
| Participant's Investment: $ *1440 000 00* | Participant Percentage: *100*% |
| Loan Interest Rate: *3.75*% | Seller Interest Rate: *3.49* % (if fixed rate)<br>✓ check here if variable rate and complete<br>variable rate addendum |
| Monthly Loan Payment: $ *4500 00* from Borrower<br>Interest Only: ✓ Yes ____(No) (check one)<br>if interest only: Minimum Medallion Value<br>$ | Term of Loan in months: *36*<br>Amortization period if different than Term<br>*Interest Only* |
| Monthly Payment due COTMF<br>$ *4188.00* | Other Terms:_____<br>_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above.  The terms of the Participation
Agreement are incorporated into this Schedule by reference.  Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement.  In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern.  If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

| | |
|---|---|
| TRI GLOBAL FINANCIAL SERVICES, INC.<br>By: *[signature]*<br>Name: *DANIELLA ITIN*<br>Title: *V.P.*<br>Date: *7 30 12* | CAPITAL ONE TAXI MEDALLION FINANCE<br>By:_____<br>Name:_____<br>Title:_____<br>Date:_____ |

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of July, 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: VP
Address: 2617 S. WABASH AVE CHICAGO
Date: 7.30.12            IL 60616

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.      <u>Seller Interest Rate</u>.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein).  The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.      **Fixed Rate Conversion**.  At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion.  Such notice shall specify the effective date of such conversion (the "Effective Date").  From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate.  Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.      **Entire Understanding**.  Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment.  Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.      **Pre-Payment Fee**.  COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _Daniella Itin_ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: VP | Title: _____ |
| Date: 7.30.12 | Date: _____ |

173996v1

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1.     Participation Schedule. Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.     Participation Percentage. The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3.     ACH Payments: The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4.     Full Force and Effect. Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: VP | Title: _____ |
| Date: 7. 30. 12 | Date: _____ |

**EXH. "1"**

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: CHICAGO POLO XII INC | Name of Guarantor(s): Symon Garber Chicago Elite Cab Corp |
| Loan Amount to Borrower: $ 960 000.00 | Loan Maturity Date: September 10, 2012 |
| Participant's Investment: $ 960 000.00 | Participant Percentage: 100% |
| Loan Interest Rate: 3.75% | Seller Interest Rate: 3.49% (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 3000.00 from Borrower Interest Only: ✓ Yes ____ (No) (check one) ·if interest only: Minimum Medallion Value $ | Term of Loan in months: 36 Amortization period if different than Term Interest Only |
| Monthly Payment due COTMF $2792.00 | Other Terms:_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL　　　　　CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By:_____　　　By:_____
Name: DANIELLA ITIN　　　　　　Name: Salvatore Chierilo
Title: VP　　　　　　　　　　　　Title: VP
Date: AUGUST 21, 2012　　　　　　Date: 8-21-11

<u>EXH. "2"</u>

<u>ASSIGNMENT & TRANSFER</u>

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on <u>Ex. "1"</u>. We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this _21_ day of _August, 2012_.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: _V.P._
Address: _2617 S. Wabash Ave Chicago IL 60616_
Date: _8 21 12_

40993v1

<u>Variable Rate Addendum</u>

This Addendum to that Participation Schedule of Terms for COTMF Loan # _____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1. <u>Seller Interest Rate</u>. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: | By: |
| Name: DANIELLA ITIN | Name: Salvatore Chirico |
| Title: V.P. | Title: VP |
| Date: 8, 21, 12 | Date: 8·21·12 |

Amendment No. 1 made this ____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1.    Participation Schedule. Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.    Participation Percentage. The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3.    ACH Payments: The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4.    Full Force and Effect. Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: _DANIELLA ITIN_
Title: _V. P._
Date: _8. 21. 12_

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _Salvatore Chierico_
Title: _VP_
Date: _8.21-12_

EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: DOLFINA TAXI INC | Name of Guarantor(s): Symon Garber Chicago Elite Cab Corp |
| Loan Amount to Borrower: $ 960 000.00 | Loan Maturity Date: September 10, 2012 |
| Participant's Investment: $ 960 000.00 | Participant Percentage: 100% |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 3000.00 from Borrower Interest Only: ✓ Yes ____ (No) (check one) if interest only: Minimum Medallion Value $ | Term of Loan in months: 36 Amortization period if different than Term Interest Only |
| Monthly Payment due COTMF $ 2792.00 | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: AUGUST 21, 2012

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: Salvatore Chierico
Title: VP
Date: 8-21-12

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this _21_ day of _August, 2012_.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: _V. P._
Address: _2617 S. Wabash Ave Chicago IL 60616_
Date: _8  21  12_

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.  **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.    **Fixed Rate Conversion**.  At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion.  Such notice shall specify the effective date of such conversion (the "Effective Date").  From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate.  Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.    **Entire Understanding**.  Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment.  Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.    **Pre-Payment Fee**.  COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: _DANIELLA ITIN_
Title: _V.P._
Date: _8, 21, 12_

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _Salvatore Chierico_
Title: _VP_
Date: _8·21·12_

Amendment No. 1 made this ____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are
desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it
is agreed as follows:

1.      Participation Schedule.  Exh. "1" to the Master JPA shall be replaced by
the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.      Participation Percentage.  The word "Borrower" on line 3, par. 1(i) of the
Master JPA is changed to "Seller".

3.      ACH Payments:  The word "debt" on line 2, second full paragraph on page
5 of the Master JPA is changed to "debit".

4.      Full Force and Effect.  Except as specifically modified by the terms of this
Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this
Amendment No. 1 may be amended or modified except in a writing executed by both Tri
Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized
terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES,
INC.

By: _____
Name: DANIELLA ETIN
Title: V. P.
Date: 8, 21, 12

CAPITAL ONE TAXI MEDALLION
FINANCE

By: _____
Name: Salvatore Chierico
Title: V P
Date: 8-21-12

**EXH. "1"**

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: *ENETOCHKA TAXI INC* | Name of Guarantor(s): *Symon Garber Chicago Elite Cab Corp* |
| Loan Amount to Borrower: $ *960 000.00* | Loan Maturity Date: *September 10, 2012* |
| Participant's Investment: $ *960000.00* | Participant Percentage: *100*% |
| Loan Interest Rate: *3.75*% | Seller Interest Rate: *3.49* % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ *3000.00* from Borrower Interest Only: ✓ Yes ____(No) (check one) if interest only: Minimum Medallion Value $ | Term of Loan in months: *36* Amortization period if different than Term *Interest Only* |
| Monthly Payment due COTMF $ *2792.00* | Other Terms: _____ _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____
Name: *DANIELLA ITIN*
Title: *VP*
Date: *AUGUST 21, 2012*

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: *Salvatore Chierico*
Title: *VP*
Date: *8-21-14*

<u>EXH. "2"</u>

<u>ASSIGNMENT & TRANSFER</u>

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on <u>Ex. "1"</u>. We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this _21_ day of _August, 2012_.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _Priscilla Etin_
Title: _V. P._
Address: _2617 S. Wabash Ave Chicago Il 60616_
Date: _8 21 12_

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1. **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.     **Fixed Rate Conversion**.  At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion.  Such notice shall specify the effective date of such conversion (the "Effective Date").  From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate.  Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.     **Entire Understanding**.  Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment.  Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.     **Pre-Payment Fee**.  COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: V.P.
Date: 8, 21, 12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: Salvatore Chierico
Title: VP
Date: 8·21·12

173996v1

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are
desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it
is agreed as follows:

1. Participation Schedule. Exh. "1" to the Master JPA shall be replaced by
the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. Participation Percentage. The word "Borrower" on line 3, par. 1(i) of the
Master JPA is changed to "Seller".

3. ACH Payments: The word "debt" on line 2, second full paragraph on page
5 of the Master JPA is changed to "debit".

4. Full Force and Effect. Except as specifically modified by the terms of this
Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this
Amendment No. 1 may be amended or modified except in a writing executed by both Tri
Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized
terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES,
INC.

By: _____
Name: DANIELLA ITIN
Title: V. P.
Date: 8, 21, 12

CAPITAL ONE TAXI MEDALLION
FINANCE

By: _____
Name: Salvatore Chierico
Title: VP
Date: 8-21-12

<u>EXH. "1"</u>

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC. ("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower:<br>FUNNY MONICA IN CHICAGO INC | Name of Guarantor(s): GALINA GARBER SHEIN<br>CHICAGO ELITE CAB CORP |
| Loan Amount to Borrower: $ 960,000.00 | Loan Maturity Date: SEP 10 2015 |
| Participant's Investment: $ 960,000.00 | Participant Percentage: 100 % |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate)<br>✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 3000.00 from Borrower<br>Interest Only: ✓ Yes ____ (No) (check one)<br>if interest only: Minimum Medallion Value<br>$ _____ | Term of Loan in months: 36<br>Amortization period if different than Term<br>INTEREST ONLY |
| Monthly Payment due COTMF<br><br>$ 2,792.00 | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _(signature)_ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: VP | Title: _____ |
| Date: 8-30-12 | Date: _____ |

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this _30_ day of _AUGUST_, _2012_

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _Priscilla Itin_

Title: _V. P._

Address: _2617 S. WABASH AVE CHICAGO IL 60616_

Date: _8-30-12_

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.     **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.     **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.     **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: | By: |
| Name: DANIELLA ITIN | Name: |
| Title: V. P. | Title: |
| Date: 8 - 30 - 12 | Date: |

173996v1

Amendment No. 1 made this _____ day of November, 2010 to that certain Master Joint Participation Agreement dated August 2, 2010 by and between Tri Global Financial Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi Medallion Finance (a trade name of All Points Capital Corp.) ("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1.  Participation Schedule.  Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.  Participation Percentage.  The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3.  ACH Payments:  The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4.  Full Force and Effect.  Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: V.P.
Date: 8 - 30 - 12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

### EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower:<br>*GALINA CAB CORP* | Name of Guarantor(s): *GALINA GARBER SHEINO*<br>*CHICAGO ELITE CAB CORP* |
| Loan Amount to Borrower: $ *1,440,000.00* | Loan Maturity Date: *SEP 10 2015* |
| Participant's Investment: $ *1,440,000.00* | Participant Percentage: *100* % |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate)<br>*✓* check here if variable rate and complete<br>variable rate addendum |
| Monthly Loan Payment: $ *4375.00* from<br>Borrower<br>Interest Only: *✓* Yes _____ (No) (check one)<br>if interest only: Minimum Medallion Value<br>$ | Term of Loan in months: *36*<br>Amortization period if different than Term<br>*INTEREST ONLY* |
| Monthly Payment due COTMF<br><br>$ *4071.67* | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL                          CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____                     By: _____
Name: *DANIELLA ITIN*                         Name: _____
Title: *VP*                                   Title: _____
Date: *8-30-12*                               Date: _____

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of AUGUST, 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____

Title: V.P.

Address: 2617 S. WABASH AVE CHICAGO IL 60616

Date: 8-30-12

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1. **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. <u>Fixed Rate Conversion</u>. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. <u>Entire Understanding</u>. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. <u>Pre-Payment Fee</u>. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _(signature)_ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V.P. | Title: _____ |
| Date: 8-30-12 | Date: _____ |

173996v1

Amendment No. 1 made this ____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1. Participation Schedule. Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. Participation Percentage. The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3. ACH Payments: The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4. Full Force and Effect. Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized

terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES,
INC.

By: _____
Name: DANIELLA ITIN
Title: V. P.
Date: 8 - 30 - 12

CAPITAL ONE TAXI MEDALLION
FINANCE

By: _____
Name: _____
Title: _____
Date: _____

<u>EXH. "1"</u>

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower:<br>GAP CAB CORP | Name of Guarantor(s): *VALENTINA ZHEOR*<br>*CHICAGO ELITE CAB CORP* |
| Loan Amount to Borrower: $ *1,440,000.00* | Loan Maturity Date: *SEP. 10, 2015* |
| Participant's Investment: $ *1,440,000.00* | Participant Percentage: *100* % |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate)<br>✓ check here if variable rate and complete<br>variable rate addendum |
| Monthly Loan Payment: $ *4500.00* from<br>Borrower<br>Interest Only: ✓ Yes ____(No) (check one)<br>if interest only: Minimum Medallion Value<br>$ | Term of Loan in months: *36*<br>Amortization period if different than Term<br>*Interest Only* |
| Monthly Payment due COTMF<br><br>$ *4188.00* | Other Terms: _____<br>_____<br>_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL                    CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____           By: _____
Name: *DANIELLA ITIN*                   Name: _____
Title: *V.P.*                           Title: _____
Date: *8-28-2012*                       Date: _____

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 28 day of AUGUST, 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: VP
Address: 2617 S. WABASH AVE CHICAGO IL 60601
Date: 8-28-2012

40993v1

<u>EXH. "1"</u>

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower:<br>*GREEN TEA CAB CORP* | Name of Guarantor(s):<br>*MAYA ZUBOK* |
| Loan Amount to Borrower: $ *1,200,000.00* | Loan Maturity Date: *September 10, 2015* |
| Participant's Investment: $ *1,200,000.00* | Participant Percentage: *100* % |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate)<br>✓ check here if variable rate and complete<br>variable rate addendum |
| Monthly Loan Payment: $ *3750.00* from Borrower<br>Interest Only: ✓ Yes ____ (No) (check one)<br>if interest only: Minimum Medallion Value<br>$ | Term of Loan in months: *36*<br>Amortization period if different than Term<br>*interest only* |
| Monthly Payment due COTMF<br>$ *3490.00* | Other Terms: _____<br>_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____
Name: *ROMAN SAPINO*
Title: *PRESIDENT*
Date: *8-6-12*

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: *Salvatore Chierico*
Title: *AVP*
Date: *8-6-12*

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this ___6___ day of _August, 2012_

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: _PRESIDENT_
Address: _2617 S. Wabash Ave._
Date: _8-6-12_ _Chicago, IL_
_60616_

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: | By: |
| Name: ROMAN SAPINO | Name: Salvatore Chiecic |
| Title: PRESIDENT | Title: AVP |
| Date: 8 - 6 - 12 | Date: 8-6-12 |

173996v1

**Amendment No. 1 made this \_\_\_\_ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".**

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1.    <u>Participation Schedule</u>.  Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.    <u>Participation Percentage</u>.  The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3.    <u>ACH Payments</u>:  The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4.    <u>Full Force and Effect</u>.  Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: | By: |
| Name: ROMAN SAPINO | Name: Salvitore Chiecco |
| Title: PRESIDENT | Title: AVP |
| Date: 8-6-12 | Date: 8-6-12 |

**EXH. "1"**

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| Name of Loan Borrower: JUNE CAB CORP | Name of Guarantor(s): SYMON GARBER |
|---|---|
| Loan Amount to Borrower: $ 1440 000.00 | Loan Maturity Date: AUGUST 10, 2015 |
| Participant's Investment: $ 1440 000.00 | Participant Percentage: 100% |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 4500.00 from Borrower Interest Only: ✓ Yes ____ (No) (check one) if interest only: Minimum Medallion Value $ | Term of Loan in months: 36 Amortization period if different than Term Interest Only |
| Monthly Payment due COTMF $ 4188.00 | Other Terms:_____ _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL                     CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____             By: _____
Name: DANIELLA ITIN                      Name: _____
Title: V.P.                              Title: _____
Date: 7 30 12                            Date: _____

EXH. "2"

ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of July , 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____

Title: SVP

Address: 2617 S. WABASH AVE CHICAGO IL 60616

Date: 7.30.12

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan # _____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.     <u>Seller Interest Rate</u>.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein).  The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: VP | Title: _____ |
| Date: 7.30.12 | Date: _____ |

173996v1

**Amendment No. 1 made this \_\_\_\_ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".**

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: 7.30.12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

### EXH. "1"

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower:<br>*LUCKY FOUR CAB CORP* | Name of Guarantor(s):<br>*SYMON GARBER* |
| Loan Amount to Borrower: $ *960 000.00* | Loan Maturity Date: *AUGUST 10, 2015* |
| Participant's Investment: $ *960 000.00* | Participant Percentage: *100*% |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate)<br>✓ check here if variable rate and complete<br>variable rate addendum |
| Monthly Loan Payment: $ *3000.00* from<br>Borrower<br>Interest Only: ✓ Yes ____(No) (check one)<br>if interest only: Minimum Medallion Value<br>$ | Term of Loan in months: *36*<br>Amortization period if different than Term<br>*Interest Only* |
| Monthly Payment due COTMF<br>$ *2,792.00* | Other Terms: _____<br>_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above.   The terms of the Participation
Agreement are incorporated into this Schedule by reference.   Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement.   In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern.   If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

| TRI GLOBAL FINANCIAL<br>SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: *[signature]* | By: _____ |
| Name: *DANIELLA ITIN* | Name: _____ |
| Title: *V.P.* | Title: _____ |
| Date: *7 30 12* | Date: _____ |

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of July , 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)
By: _____
Title: VP
Address: 2617 S. WABASH AVE CHICAGO
Date: 7.30.12         IL 60616

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.      **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.    **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.    **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.    **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: VP | Title: _____ |
| Date: 7.30.12 | Date: _____ |

173996v1

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1.    Participation Schedule. Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.    Participation Percentage. The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3.    ACH Payments: The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4.    Full Force and Effect. Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _~signature~_ | By: _____ |
| Name: ~DANIELLA ITIN~ | Name: _____ |
| Title: _VP_ | Title: _____ |
| Date: _7 . 30 . 12_ | Date: _____ |

EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: *LUCKY IN CHICAGO INC* | Name of Guarantor(s): *VALENTINA ZHBOK CHICAGO ELITE CAB CORP* |
| Loan Amount to Borrower: $ *1,200,000.00* | Loan Maturity Date: *SEP. 10, 2015* |
| Participant's Investment: $ *1,200,000.00* | Participant Percentage: *100* % |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ *3,750.00* from Borrower Interest Only: ✓ Yes _____ (No) (check one) if interest only: Minimum Medallion Value $ | Term of Loan in months: *36* Amortization period if different than Term *Interest Only* |
| Monthly Payment due COTMF $ *3,490.00* | Other Terms:_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL                    CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____          By: _____
Name: *DANIELLA ITIN*                   Name: _____
Title: *V. P.*                          Title: _____
Date: *8-28-2012*                       Date: _____

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guaranties. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 28 day of AUGUST, 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: VP
Address: 2617 S. WABASH AVE CHICAGO IL 6060
Date: 8-28-2012

40993v1

<u>Variable Rate Addendum</u>

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    <u>Seller Interest Rate</u>. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.  **Fixed Rate Conversion.**  At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.  **Entire Understanding.**  Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.  **Pre-Payment Fee.**  COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: ~~DANIELLA ITIN~~ | Name: _____ |
| Title: V P | Title: _____ |
| Date: 8-28-2012 | Date: _____ |

173996v1

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: V P
Date: 8 - 28 - 2012

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

<u>EXH. "1"</u>

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: <br> MAGENTA ZONE CAB CORP | Name of Guarantor(s): GALINA GARBER SHEIND <br> CHICAGO ELITE CAB CORP |
| Loan Amount to Borrower: $ 960,000.00 | Loan Maturity Date: SEP 10 2015 |
| Participant's Investment: $ 960,000.00 | Participant Percentage: 100 % |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate) <br> ✓ check here if variable rate and complete <br> variable rate addendum |
| Monthly Loan Payment: $ 300 000 from Borrower <br> Interest Only: ✓ Yes ____ (No) (check one) <br> if interest only: Minimum Medallion Value <br> $ | Term of Loan in months: 36 <br> Amortization period if different than Term <br> INTEREST ONLY |
| Monthly Payment due COTMF <br> $ 2792.00 | Other Terms:_____ <br> _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL      CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____      By: _____
Name: DANIELLA ITIN      Name: _____
Title: VP      Title: _____
Date: 8-30-12      Date: _____

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this __30__ day of _AUGUST_, _2012_

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____

Title: _V.P._____

Address: _2617 S. WABASH AVE CHICAGO IL 60616_

Date: ____8-30-12_____

40993v1

**Variable Rate Addendum**

This Addendum to that Participation Schedule of Terms for COTMF Loan # _____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V.P. | Title: _____ |
| Date: 8-30-12 | Date: _____ |

173996v1

**Amendment No. 1 made this _____ day of November, 2010 to that certain Master Joint Participation Agreement dated August 2, 2010 by and between Tri Global Financial Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi Medallion Finance (a trade name of All Points Capital Corp.) ("COTMF" or "Participant") hereafter, the "Master JPA".**

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1.    Participation Schedule.  Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.    Participation Percentage.  The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3.    ACH Payments:  The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4.    Full Force and Effect.  Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V.P. | Title: _____ |
| Date: 8-30-12 | Date: _____ |

<u>EXH. "1"</u>

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC. ("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower: <br> *NALVE ZONE CAB CO* | Name of Guarantor(s): *GALINA GARBER SHEING* <br> *CHICAGO ELITE CAB CORP* |
| Loan Amount to Borrower: $ *1,200,000.00* | Loan Maturity Date: *SEP 10 2015* |
| Participant's Investment: $ *1,200,000.00* | Participant Percentage: *100* % |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate) <br> *√* check here if variable rate and complete <br> variable rate addendum |
| Monthly Loan Payment: $ *3750.00* from Borrower <br> Interest Only: *√* Yes ____(No) (check one) <br> if interest only: Minimum Medallion Value <br> $ | Term of Loan in months: *36* <br> Amortization period if different than Term <br> *INTEREST ONLY* |
| Monthly Payment due COTMF <br><br> $ *3490.00* | Other Terms: _____ <br><br> _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

| | |
|---|---|
| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
| By: *[signature]* | By: _____ |
| Name: *DANIELLA ITIN* | Name: _____ |
| Title: *VP* | Title: _____ |
| Date: *8-30-12* | Date: _____ |

### EXH. "2"

### ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this __30__ day of __AUGUST__, __2012__.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____

Title: __V. P.__

Address: __2617 S. WABASH AVE CHICAGO IL 60616__

Date: __8-30-12__

40993v1

<u>Variable Rate Addendum</u>

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    <u>Seller Interest Rate</u>.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein).  The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.    **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.    **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.    **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V.P. | Title: _____ |
| Date: 8-30-12 | Date: _____ |

173996v1

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1. Participation Schedule. Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. Participation Percentage. The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3. ACH Payments. The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4. Full Force and Effect. Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V.P. | Title: _____ |
| Date: 8-30-12 | Date: _____ |

7110-00405
100447262

## EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower:<br>MISHA CAT CAB CORP | Name of Guarantor(s): VALENTINA ZUBOR<br>CHICAGO ELITE CAB CORP |
| Loan Amount to Borrower: $ 960,000.00 | Loan Maturity Date: SEP. 10, 2015 |
| Participant's Investment: $ 960,000.00 | Participant Percentage: 100 % |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate)<br>✓ check here if variable rate and complete<br>variable rate addendum |
| Monthly Loan Payment: $ 3000.00 from<br>Borrower<br>Interest Only: ✓ Yes ___ (No) (check one)<br>if interest only: Minimum Medallion Value<br>$ ___ | Term of Loan in months: 36<br>Amortization period if different than Term<br>Interest Only |
| Monthly Payment due COTMF<br><br>$ 2792.00 | Other Terms: _____<br>_____<br>_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: V.P.
Date: 8-28-2012

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

<u>EXH. "2"</u>

<u>ASSIGNMENT & TRANSFER</u>

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on <u>Ex. "1"</u>. We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this _28_ day of _AUGUST_, _2012_.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: _VP_
Address: _2617 S. WABASH AVE CHICAGO IL 60601_
Date: _8-28-2012_

40993v1

EXH. "1"

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower: MONACO TAXI INC | Name of Guarantor(s): Symon Garber Chicago Elite Cab Corp |
| Loan Amount to Borrower: $ 1200 000.00 | Loan Maturity Date: September 10, 2012 |
| Participant's Investment: $ 1200 000.00 | Participant Percentage: 100% |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 3750.00 from Borrower Interest Only: ✓ Yes ____ (No) (check one) if interest only: Minimum Medallion Value $ | Term of Loan in months: 36 Amortization period if different than Term Interest Only |
| Monthly Payment due COTMF $ 3490.00 | Other Terms: _____ _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

| | |
|---|---|
| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: Salvatore Chierico |
| Title: VP | Title: VP |
| Date: AUGUST 21, 2012 | Date: 8-21-12 |

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Federal One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this _21_ day of _August_, _2012_.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____

Title: _V. P._

Address: _2617 S. Wabash Ave Chicago IL 60616_

Date: _8  21  12_

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1. **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.    **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.    **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.    **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| | |
|---|---|
| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
| By: | By: |
| Name: _DANIELLA ITIN_ | Name: _Salvatore Chierico_ |
| Title: _V.P._ | Title: _VP_ |
| Date: _8, 21, 12_ | Date: _8 21 12_ |

173996v1

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: | By: |
| Name: DANIELLA ITIN | Name: Salvatore Chierico |
| Title: V.P. | Title: VP |
| Date: 8, 21, 12 | Date: 8 21 12 |

**EXH. "1"**

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: MONETA TAXI INC | Name of Guarantor(s): Symon Garler Chicago Elite Cab Corp |
| Loan Amount to Borrower: $ 960 000.00 | Loan Maturity Date: September 10, 2012 |
| Participant's Investment: $ 960 000.00 | Participant Percentage: 100% |
| Loan Interest Rate: 3.75% | Seller Interest Rate: 3.49 % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 3000.00 from Borrower Interest Only: ✓ Yes ___ (No) (check one) if interest only: Minimum Medallion Value $ | Term of Loan in months: 36 Amortization period if different than Term Interest Only |
| Monthly Payment due COTMF $ 2792.00 | Other Terms: _____ _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL                    CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____                   By: _____
Name: DANZELLA ITIN                     Name: Salvatore Chirico
Title: VP                               Title: _____
Date: AUGUST 21, 2012                   Date: 8-21-12

<u>EXH. "2"</u>

<u>ASSIGNMENT & TRANSFER</u>

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on <u>Ex. "1"</u>. We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this __21__ day of __August 2012__.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: V.P.
Address: 2617 S. Wabash Ave Chicago IL 60616
Date: 8 21 12

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    Seller Interest Rate.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.    **Fixed Rate Conversion.** At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.    **Entire Understanding.** Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.    **Pre-Payment Fee.** COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: V.P.
Date: 8.21.12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: Salvatore Chierico
Title: VP
Date: 8.21.12

173996v1

Amendment No. 1 made this ____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: V.P.
Date: 8.21.12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: Salvatore Chierico
Title: VP
Date: 8.21.12

<u>EXH. "1"</u>

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower:<br>PINK ZONE CAB CO | Name of Guarantor(s): GALINA GARBER SUEDIN<br>CHICAGO ELITE CAB CORP |
| Loan Amount to Borrower: $ 960,000.00 | Loan Maturity Date: SEP 10 2015 |
| Participant's Investment: $ 960,000.00 | Participant Percentage: 100 % |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate)<br>✓ check here if variable rate and complete<br>variable rate addendum |
| Monthly Loan Payment: $ 3,000.00 from<br>Borrower<br>Interest Only: ✓ Yes _____ (No) (check one)<br>if interest only:  Minimum Medallion Value<br>$ | Term of Loan in months:  36<br>Amortization period if different than Term<br>INTEREST ONLY |
| Monthly Payment due COTMF<br><br>$ 2,792.00 | Other Terms:_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above.  The terms of the Participation
Agreement are incorporated into this Schedule by reference.  Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement.  In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern.  If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL                    CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____          By: _____
Name: DANIELLA ITIN                    Name: _____
Title: VP                              Title: _____
Date: 8-30-12                          Date: _____

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this __30__ day of __AUGUST__, __2012__

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: __V. P.__
Address: __2617 S. WABASH AVE CHICAGO IL 60616__
Date: __8-30-12__

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan # _____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1. **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.  **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.  **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.  **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: | By: |
| Name: DANIELLA ITIN | Name: |
| Title: V.P. | Title: |
| Date: 8-30-12 | Date: |

173996v1

Amendment No. 1 made this ____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V.P. | Title: _____ |
| Date: 8-30-12 | Date: _____ |

EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: PRETTY RACHEL IN CHICAGO INC | Name of Guarantor(s): GALINA GARBER SKLING CHICAGO ELITE CAB CORP |
| Loan Amount to Borrower: $ 960,000.00 | Loan Maturity Date: SEP 10 2015 |
| Participant's Investment: $ 960,000.00 | Participant Percentage: 100 % |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 3000.00 from Borrower Interest Only: ✓ Yes ____ (No) (check one) if interest only: Minimum Medallion Value $ | Term of Loan in months: 36 Amortization period if different than Term INTEREST ONLY |
| Monthly Payment due COTMF $ 2,792.00 | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL                    CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____                   By: _____
Name: DANIELLA ITIN                     Name: _____
Title: VP                               Title: _____
Date: 8-30-12                           Date: _____

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of AUGUST, 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: V. P.
Address: 2617 S. WABASH AVE CHICAGO IL 60616
Date: 8-30-12

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    **Seller Interest Rate**.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein).  The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.     **Fixed Rate Conversion**.  At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.     **Entire Understanding**.  Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.     **Pre-Payment Fee**.  COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: V. P.
Date: 8 - 30 - 12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

173996v1

Amendment No. 1 made this ____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1.    Participation Schedule.  Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.    Participation Percentage.  The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3.    ACH Payments:  The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4.    Full Force and Effect.  Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V.P. | Title: _____ |
| Date: 8-30-12 | Date: _____ |

*Loan # 7110-00398*

**EXH. "1"**

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: *PRINCESS TAXI INC* | Name of Guarantor(s): *Symon Garber Chicago Elite Cab Corp* |
| Loan Amount to Borrower: $ *960 000.00* | Loan Maturity Date: *September 10, 2012* |
| Participant's Investment: $ *960 000.00* | Participant Percentage: *100%* |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate)<br> ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ *3000.00* from Borrower<br>Interest Only: ✓ Yes ____(No) (check one)<br>if interest only: Minimum Medallion Value $ | Term of Loan in months: *36*<br>Amortization period if different than Term<br>*Interest Only* |
| Monthly Payment due COTMF<br>$ *2792.00* | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: AUGUST 21, 2012

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: Silvatore Chierico
Title: VP
Date: 8-21-12

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this _21_ day of _August, 2012_.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: _V.P._
Address: _2617 S. Wabash Ave  Chicago IL_
Date: _8  21  12_                    _60616_

40993v1

<u>**Variable Rate Addendum**</u>

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1. <u>Seller Interest Rate</u>. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.    **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.    **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.    **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES,
INC.

By: _____
Name: _DANIELLA ITIN_____
Title: _V.P._____
Date: _8, 21, 12_____

CAPITAL ONE TAXI MEDALLION
FINANCE

By: _____
Name: _Silvatore Chiprico____
Title: _VP_____
Date: _8·21·12_____

173996v1

Amendment No. 1 made this ____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1.    Participation Schedule.  Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.    Participation Percentage.  The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3.    ACH Payments:  The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4.    Full Force and Effect.  Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: _DANIELLA ITIN_ | Name: _Salvatore Chierico_ |
| Title: _V. P._ | Title: _UP_ |
| Date: _8. 21. 12_ | Date: _8.21.12_ |

<u>EXH. "1"</u>

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower: <br> RACHEL TAXI INC | Name of Guarantor(s): GALINA GARBER SHEIND <br> CHICAGO ELITE CAB CORP |
| Loan Amount to Borrower: $ 960,000.00 | Loan Maturity Date: SEP 10 2015 |
| Participant's Investment: $ 960,000.00 | Participant Percentage: 100 % |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate) <br> ✓ check here if variable rate and complete <br> variable rate addendum |
| Monthly Loan Payment: $ 3,000.00 from Borrower <br> Interest Only: ✓ Yes ____ (No) (check one) <br> if interest only: Minimum Medallion Value <br> $ | Term of Loan in months: 36 <br> Amortization period if different than Term <br> INTEREST ONLY |
| Monthly Payment due COTMF <br> $ 2,792.00 | Other Terms: _____ <br> _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____

Name: DANIELLA ITIN

Title: VP

Date: 8-30-12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____

Name: _____

Title: _____

Date: _____

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated in Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of AUGUST, 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: V. P.
Address: 2617 S. WABASH AVE CHICAGO IL 60616
Date: 8-30-12

40993v1

### Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _Daniella Itin_ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V.P. | Title: _____ |
| Date: 8-30-12 | Date: _____ |

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _Priscilla Itin_ | By: _____ |
| Name: _DANIELLA ITIN_ | Name: _____ |
| Title: _V.P._ | Title: _____ |
| Date: _8-30-12_ | Date: _____ |

EXH. "1"

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC. ("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower: *RESERVIOR II HACKING CORP* | Name of Guarantor(s): *SYMON GARBER* |
| Loan Amount to Borrower: $ *1 200 000.00* | Loan Maturity Date: *AUGUST 10, 2015* |
| Participant's Investment: $ *1 200 000.00* | Participant Percentage: *100* % |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ *3750.00* from Borrower<br>Interest Only: ✓ Yes ____(No) (check one)<br>if interest only: Minimum Medallion Value<br>$ | Term of Loan in months: *36*<br>Amortization period if different than Term *INTEREST ONLY* |
| Monthly Payment due COTMF<br>$ *3490.00* | Other Terms:_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

| | |
|---|---|
| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
| By: _____ | By: _____ |
| Name: *DANIELLA ITIN* | Name: *Silustir Chieric* |
| Title: *VP* | Title: *VP* |
| Date: *7.30.12* | Date: *7-30-12* |

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of JULY, 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By:

Title:

Address: 2617 S. WABASH AVE CHICAGO
                                                                IL 60616

Date: 7.30.12

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1. **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: 7.30.12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: Salvatore Chiccico
Title: VP
Date: 7.30.12

173996v1

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are
desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it
is agreed as follows:

1. _Participation Schedule._ Exh. "1" to the Master JPA shall be replaced by
the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. _Participation Percentage._ The word "Borrower" on line 3, par. 1(i) of the
Master JPA is changed to "Seller".

3. _ACH Payments:_ The word "debt" on line 2, second full paragraph on page
5 of the Master JPA is changed to "debit".

4. _Full Force and Effect._ Except as specifically modified by the terms of this
Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this
Amendment No. 1 may be amended or modified except in a writing executed by both Tri
Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized
terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES,
INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: 7.30.12

CAPITAL ONE TAXI MEDALLION
FINANCE

By: _____
Name: Salvatore Chirico
Title: VP
Date: 7-30-12

**EXH. "1"**

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: SAMUEL TAXI CORP | Name of Guarantor(s): SYMON GARBER |
| Loan Amount to Borrower: $ 1440 000 00 | Loan Maturity Date: AUGUST 10, 2015 |
| Participant's Investment: $ 1440 000.00 | Participant Percentage: 100% |
| Loan Interest Rate: 3.75% | Seller Interest Rate: 3.49% (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 4500.00 from Borrower Interest Only: ✓ Yes ____(No) (check one) if interest only: Minimum Medallion Value $ _____ | Term of Loan in months: 36 Amortization period if different than Term Interest Only |
| Monthly Payment due COTMF $ 4188.00 | Other Terms: _____ _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL                       CAPITAL ONE TAXI MEDALLION FINANCE
SERVICES, INC.

By: _____             By: _____
Name: DANIELLA ITIN                        Name: _____
Title: V.P.                                Title: _____
Date: 7 30 12                              Date: _____

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of July , 2012 .

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____

Title: VP

Address: 2617 S. WABASH AVE CHICAGO

Date: 7.30.12        IL 60616

40993v1

**Variable Rate Addendum**

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.   **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _Daniella Itin_ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: VP | Title: _____ |
| Date: 7.30.12 | Date: _____ |

173996v1

**Amendment No. 1 made this _____ day of November, 2010**
**to that certain Master Joint Participation Agreement dated**
**August 2, 2010 by and between Tri Global Financial**
**Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi**
**Medallion Finance (a trade name of All Points Capital Corp.)**
**("COTMF" or "Participant") hereafter, the "Master JPA".**

WHEREAS, Seller and Participant are partners to the Master JPA and are

desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it

is agreed as follows:

1.     Participation Schedule.  Exh. "1" to the Master JPA shall be replaced by

the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.     Participation Percentage.  The word "Borrower" on line 3, par. 1(i) of the

Master JPA is changed to "Seller".

3.     ACH Payments:  The word "debt" on line 2, second full paragraph on page

5 of the Master JPA is changed to "debit".

4.     Full Force and Effect.  Except as specifically modified by the terms of this

Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this

Amendment No. 1 may be amended or modified except in a writing executed by both Tri

Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized

terms shall have the meaning give to them in the Master JPA.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: VP | Title: _____ |
| Date: 7.30.12 | Date: _____ |

<u>EXH. "1"</u>

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: SHAUN JR TAXI INC | Name of Guarantor(s): Symon Garber Chicago Elite Cab Corp |
| Loan Amount to Borrower: $ 1440 000.00 | Loan Maturity Date: September 10, 2012 |
| Participant's Investment: $ 1440000.00 | Participant Percentage: 100% |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 4500.00 from Borrower Interest Only: ✓ Yes ___ (No) (check one) if interest only: Minimum Medallion Value $ _____ | Term of Loan in months: 36 Amortization period if different than Term Interest Only |
| Monthly Payment due COTMF $ 4188.00 | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: AUGUST 21, 2012

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: Salvatore Chierico
Title: VP
Date: 8-21-12

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this _21_ day of _August_, _2012_ .

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____

Title: _V.P._

Address: _2617 S. Wabash Ave Chicago Il 60616_

Date: _8 21 12_

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.     **Seller Interest Rate**.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein).  The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2.      **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3.      **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4.      **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: V.P.
Date: 8, 21, 12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: Salvatore Chicrico
Title: VP
Date: 8-21-12

173996v1

Amendment No. 1 made this _____ day of November, 2010
to that certain Master Joint Participation Agreement dated
August 2, 2010 by and between Tri Global Financial
Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi
Medallion Finance (a trade name of All Points Capital Corp.)
("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: _DANIELLA ITIN_
Title: _V. P._
Date: _8, 21, 12_

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _Salvatore Chierico_
Title: _VP_
Date: _8·21·12_

<u>EXH. "1"</u>

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC. ("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower: SIRO INC | Name of Guarantor(s): SYMON GARBER |
| Loan Amount to Borrower: $ 2880 000.00 | Loan Maturity Date: AUGUST 10, 2015 |
| Participant's Investment: $ 2880 000.00 | Participant Percentage: 100% |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 9000.00 from Borrower Interest Only: ✓ Yes ____ (No) (check one) if interest only: Minimum Medallion Value $ | Term of Loan in months: 36 Amortization period if different than Term Interest Only |
| Monthly Payment due COTMF $ 8,376.00 | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: V.P.
Date: 7 30 12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

<u>EXH. "2"</u>

<u>ASSIGNMENT & TRANSFER</u>

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on <u>Ex. "1"</u>. We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of July , 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: VP
Address: 2617 S. WABASH AVE CHICAGO
Date: 7.30.12        IL 60616

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    **Seller Interest Rate**.  The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein).  The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date.  If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount.  COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate.  If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations.  If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. <u>Fixed Rate Conversion</u>. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. <u>Entire Understanding</u>. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. <u>Pre-Payment Fee</u>. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: 7.30.12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

173996v1

Amendment No. 1 made this _____ day of November, 2010 to that certain Master Joint Participation Agreement dated August 2, 2010 by and between Tri Global Financial Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi Medallion Finance (a trade name of All Points Capital Corp.) ("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: 7 . 30 . 12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

<u>EXH. "1"</u>

**PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE**

| | |
|---|---|
| Name of Loan Borrower: SLS JET CAB CORP | Name of Guarantor(s): SYMON GARBER |
| Loan Amount to Borrower: $ 1440 000 00 | Loan Maturity Date: AUGUST 10, 2015 |
| Participant's Investment: $ 1440 000 00 | Participant Percentage: 100% |
| Loan Interest Rate: 3.75 % | Seller Interest Rate: 3.49 % (if fixed rate) ✓ check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ 4500 00 from Borrower Interest Only: ✓ Yes ____ (No) (check one) if interest only: Minimum Medallion Value $ | Term of Loan in months: 36 Amortization period if different than Term Interest Only |
| Monthly Payment due COTMF $ 4188.00 | Other Terms: _____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to
the Borrower, pursuant to the Assignment and Transfer executed together herewith, all
according to the economic terms reflected above. The terms of the Participation
Agreement are incorporated into this Schedule by reference. Capitalized terms on this
Schedule shall have the meaning given to them in the Participation Agreement. In the
event of any conflict between the terms of this Schedule and the Master Joint
Participation Agreement, then the Master Joint Participation Agreement shall govern. If
the Amortization period exceeds the Term of the Loan, then the
Loan is due and payable on the Loan Maturity Date.

| | |
|---|---|
| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V.P. | Title: _____ |
| Date: 7 30 12 | Date: _____ |

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 30 day of July , 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: VP
Address: 2617 S. WABASH AVE CHICAGO
Date: 7. 30. 12      IL 60616

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1. **Seller Interest Rate**. The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: 7.30.12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

173996v1

Amendment No. 1 made this _____ day of November, 2010 to that certain Master Joint Participation Agreement dated August 2, 2010 by and between Tri Global Financial Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi Medallion Finance (a trade name of All Points Capital Corp.) ("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1.    Participation Schedule.  Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2.    Participation Percentage.  The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3.    ACH Payments:  The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4.    Full Force and Effect.  Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance.  Capitalized terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: 7 . 30 . 12

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

## EXH. "1"

PARTICIPATION SCHEDULE OF TERMS TO MASTER JOINT
PARTICIPATION AGREEMENT ("PARTICIPATION AGREEMENT") DATED
AUGUST 2, 2010 BETWEEN TRI GLOBAL FINANCIAL SERVICES, INC.
("Seller") AND CAPITAL ONE TAXI MEDALLION FINANCE

| | |
|---|---|
| Name of Loan Borrower: *VALEX CAB CORP* | Name of Guarantor(s): *VALENTINA ZLIBOR CHICAGO ELITE CAB CORP* |
| Loan Amount to Borrower: $ *1,440,000.00* | Loan Maturity Date: *SEP. 10, 2015* |
| Participant's Investment: $ *1,440,000.00* | Participant Percentage: *100* % |
| Loan Interest Rate: *3.75* % | Seller Interest Rate: *3.49* % (if fixed rate) *✓* check here if variable rate and complete variable rate addendum |
| Monthly Loan Payment: $ *4,500.00* from Borrower<br>Interest Only: *✓* Yes ____ (No) (check one)<br>if interest only: Minimum Medallion Value $ ____ | Term of Loan in months: *36*<br>Amortization period if different than Term *INTEREST ONLY* |
| Monthly Payment due COTMF<br><br>$ *4,188.00* | Other Terms: _____<br><br>_____ |

Participant hereby acquires the Participation Percentage referenced above in the Loan to the Borrower, pursuant to the Assignment and Transfer executed together herewith, all according to the economic terms reflected above. The terms of the Participation Agreement are incorporated into this Schedule by reference. Capitalized terms on this Schedule shall have the meaning given to them in the Participation Agreement. In the event of any conflict between the terms of this Schedule and the Master Joint Participation Agreement, then the Master Joint Participation Agreement shall govern. If the Amortization period exceeds the Term of the Loan, then the Loan is due and payable on the Loan Maturity Date.

TRI GLOBAL FINANCIAL
SERVICES, INC.

By: _____
Name: *DANIELLA ITIN*
Title: *V.P.*
Date: *8-28-2012*

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____

## EXH. "2"

## ASSIGNMENT & TRANSFER

FOR VALUE RECEIVED, the undersigned hereby irrevocably and unconditionally sells, assigns and transfers to Capital One Taxi Medallion Finance, a trade name for All Points Capital Corp., its successor and assigns (collectively "COTMF"), all of the undersigned's right, title and interest in, to and under (but none of the undersigned's obligations under) the Loan set forth on Exh. "1" hereto between the undersigned lender, and _____ borrower ("Borrower" or "Obligor") together with all the sums payable thereunder and all of our right, title and interest in and to the Collateral described therein (the "Collateral"), all guaranties or surety agreements, and all insurance and collateral of any kind or nature which we have pertaining thereto, and all rights, remedies and powers relating thereto, with good right in COTMF to collect and discharge the same. Capitalized terms used herein shall have the meaning given to them in that certain Master Joint Participation Agreement between COTMF and the undersigned dated _____, 2010.

We represent, warrant and agree as to the Loan that: A. We have (and COTMF will have) good title thereto and good title to (or a valid, perfected first priority security interest in) the Collateral and good right to sell, lease and transfer the same; B. It is a valid obligation arising out of a bona fide commercial loan to Obligor in the ordinary course of Obligor's business; C. It contains or describes the entire agreement and all instruments and other documents made or given in connection with such Loan; D. No representations, warranties or inducements not contained in the Loan have been made or given; E. It creates a first priority security interest in the Collateral in our favor; F. It and the Collateral are and will be free of any other liens and encumbrances and are and will be free of any claims, defenses, offsets and counterclaims real or claimed; G. All information furnished to COTMF and all statements made and unpaid balances shown in it are and will be true and correct, and the signature thereon, on any assignment and on any loan or guaranty or surety applicable to it are the genuine signatures of the persons having due authority and capacity; H. It is and will be enforceable against all parties thereto in accordance with its terms; I. We have complied, and it complies, with all applicable federal, state and municipal laws, rules or regulations, having the force of law regarding leases, security agreements, loans, subleases and installment paper (including, without limitation, the requirements of the Federal Equal Credit Opportunity Act, Regulation "B" thereunder and any applicable usury laws); J. It and all applicable financing statements have been properly and timely filed and recorded; K. The Collateral is and has been unconditionally accepted by Obligor and is and will be insured in accordance with the terms of the Loan and we have fulfilled and will fulfill our obligations to Obligor with respect thereto; L. We have not received any payments under the Loan unless indicated on Ex. "1". We subordinate to COTMF all liens and/or encumbrances (statutory and/or otherwise) which we may now have or may hereafter acquire and/or assert against the Collateral. COTMF may in our name endorse any notes and/or other related instruments now or hereafter given in connection with the Loan and all checks, drafts and other remittances relating to the Loan. We give express permission to COTMF to release, by operation or law or otherwise, and/or to compromise or adjust any or all rights against, and grant extensions of time of payment to, Obligor or any guarantor, surety or other person obligated on the Loan, and to substitute Borrower's and/or other obligors, without notice to us and without affecting our obligations hereunder. COTMF may, at any time, without prior

notice to us, appropriate and apply to the payment of any of our obligations to COTMF, any and all balances, sums, property, credits, accounts, reserves, collections, checks or other instruments belonging or payable to us and in COTMF's possession, and for such purposes, endorse our name on any such instrument for payment. We hereby waive notice of acceptance hereof, presentment for payment, demand, notice of protest and dishonor, notice of default or non-payment and notices of every kind and nature with respect to the Loan and/or related instruments and guarantees. In the event of any default under the Loan or any other lease, sublease, promissory note or security agreement at any time assigned by us to COTMF, we hereby waive and relinquish unto COTMF any interest that we may have in the Collateral and any monies that COTMF may be holding for our account. Any breach by the undersigned of the aforesaid representations or warranties shall entitle COTMF, in addition to any rights it has under the Master Joint Participation Agreement, to demand of the undersigned payment of the remaining balance due under the Loan.

We indemnify and hold COTMF harmless against any claim, suit, action, proceeding, judgment, loss, liability or expense (including, without limitation, attorneys' fees and costs) arising out of or based upon: (a) our breach of any agreement, representation or warranty contained herein in the Master Joint Participation Agreement or in the Loan; (b) any taxes, assessments or penalties imposed on any of the Collateral or on any payment received by us under the Loan; (c) any loss, damage or injury to property, persons, services or equipment resulting from or in connection with the delivery, installation, ownership, leasing, use, possession, control, operation, maintenance or repair of any of the Collateral; or (d) a failure to fully and timely comply with any and all applicable laws and/or regulations relating to disclosures, the giving of notices, the obtaining of any necessary permits, approvals, licenses, certificates and the like, and/or the making of any required filings and/or recordings, in each case in connection with the Collateral and/or the transaction evidenced by the Loan. This Assignment and Transfer shall be governed by the laws of the State of New York, without regard to principles of conflicts of law or choice of law. We hereby irrevocably (i) consent to the jurisdiction and venue of the state and federal courts sitting in Nassau County, New York, in any action or proceeding arising out of or relating to this Assignment; (ii) agree that service of process in any such action or proceeding may be given to us by mail to our address shown below; and (iii) WAIVE TRIAL BY JURY and the right to interpose any defense, offset or counterclaim of any kind in any such action or proceeding.

IN WITNESS WHEREOF, we have caused this Assignment and Transfer to be executed this 28 day of AUGUST , 2012.

TRI GLOBAL FINANCIAL SERVICES, INC.
(Assignor)

By: _____
Title: VP
Address: 2617 S. WABASH AVE CHICAGO IL 60601
Date: 8-28-2012

40993v1

## Variable Rate Addendum

This Addendum to that Participation Schedule of Terms for COTMF Loan #_____ dated _____ 2010 (the "Schedule") to the Master Joint Participation Agreement ("Participation Agreement") dated August 2, 2010 between Tri Global Financial Services, Inc. ("Seller") and Capital One Taxi Medallion Finance ("COTMF") is made a part of the Schedule and incorporates by reference all the provisions thereof.

Whereas, the Seller has selected a variable rate of interest as the Seller Interest Rate as detailed below.

Whereas, the Seller has requested the ability to convert the Seller Interest Rate to a fixed rate during the term of the Loan,

Now Therefore, it is agreed as follows:

1.    **Seller Interest Rate.** The Seller Interest Rate due hereunder shall bear interest at an annual rate, for each applicable LIBOR Interest Period, equal to three hundred fifty (350) basis points above LIBOR (as such term is defined herein). The initial LIBOR Interest Period shall commence on the date hereof and end on the 30th day of the next full calendar month after the date hereof.

For purposes hereof, "LIBOR" means, with respect to each Period, the rate for deposits in U.S. Dollars for a period of the Designated Maturity which appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on the day that is two London Banking Days preceding that Reset Date. If such rate does not appear on the Reuters Screen LIBOR01 Page, the rate for that Reset Date will be determined as if the parties had specific "USD-LIBOR-Reference Banks" as the applicable Floating Rate Option.

"USD-LIBOR-Reference Banks" means that the rate for a Reset Date will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the Reference Banks at approximately 11:00 a.m. London time, on the day that is two London Banking Days preceding the Reset Date to prime banks in the London interbank market for a period of the designated maturity commencing on that Reset Date and in a representative amount. COTMF will request the principal London office of each of the Reference Banks to provide a quotation of its rate. If at least two such quotations are provided, the rate for that Reset Date will be the arithmetic mean of the quotations. If fewer than two quotations are provided as requested, the rate for that Reset Date will be the arithmetic mean of the rates quoted by major banks in New York City, selected by COTMF, at approximately 11:00 a.m., New York City time, on that Reset Date for loans in U.S. Dollars to leading European banks for a period of the designated maturity commencing on that Reset Date and in a representative amount.

The Seller Interest Rate for this Note shall be reset every one (1) month during the term hereof at the expiration of each respective LIBOR Interest Period. A new applicable Seller Interest Rate shall be established every one (1) month during the term hereof at the end of the preceding LIBOR Interest Period (the "Reset Date"). On each Reset Date, a new applicable Seller Interest Rate shall be established using the one (1) month LIBOR rate in effect two (2) business days prior to each respective Reset Date. Each change in the applicable Seller Interest Rate at the end of each incremental LIBOR Interest Period during the term hereof shall effect a simultaneous and corresponding change in the interest rate hereunder on each respective Reset Date without notice to the Borrower. The initial applicable Seller Interest Rate will be calculated as Three and one-half (3.5%) percent above the LIBOR rate in effect two (2) business days prior to the date hereof.

Interest shall be payable on the dates and pursuant to the terms otherwise set forth in the Participation Agreement.

2. **Fixed Rate Conversion**. At any time after the six (6) month anniversary of the date of COTMF's payment to Seller for the Participant Investment, Seller shall have the right to convert the Seller Interest Rate from a floating rate to a fixed rate, by delivery a notice of conversion to COTMF at least three (3) Business Days prior to the proposed effective date of conversion. Such notice shall specify the effective date of such conversion (the "Effective Date"). From and after the Effective Date, Seller Interest Rate shall accrue and be payable at a fixed rate equal to three and one-half (3.5%) percent above the two (2) year LIBOR swap rate. Seller shall not have the right to convert the loan back to a floating rate and the Loan Maturity Date shall not change.

3. **Entire Understanding**. Any change in the Seller Interest Rate shall not effect the principal component of the repayment of Participant's investment. Except as set forth in this Addendum, the terms and conditions of the Schedule and the Participation Agreement shall remain in full force and effect and may not be modified except as provided therein.

4. **Pre-Payment Fee**. COTMF's right to collect the Pre-Payment Fee (as defined in the Participation Agreement) is hereby waived provided that Seller does not exercise its option to convert the Seller Interest Rate from a floating rate to a fixed rate.

| TRI GLOBAL FINANCIAL SERVICES, INC. | CAPITAL ONE TAXI MEDALLION FINANCE |
|---|---|
| By: _____ | By: _____ |
| Name: DANIELLA ITIN | Name: _____ |
| Title: V P | Title: _____ |
| Date: 8-28-2012 | Date: _____ |

173996v1

Amendment No. 1 made this _____ day of November, 2010 to that certain Master Joint Participation Agreement dated August 2, 2010 by and between Tri Global Financial Services, Inc. ("Seller" or "Tri Global") and Capital One Taxi Medallion Finance (a trade name of All Points Capital Corp.) ("COTMF" or "Participant") hereafter, the "Master JPA".

WHEREAS, Seller and Participant are partners to the Master JPA and are desirous of amending the same.

NOW, THEREFORE, in consideration of the mutual promises contained herein, it is agreed as follows:

1. <u>Participation Schedule</u>. Exh. "1" to the Master JPA shall be replaced by the Participation Schedule and Variable Rate Addendum annexed hereto as Exh. "1".

2. <u>Participation Percentage</u>. The word "Borrower" on line 3, par. 1(i) of the Master JPA is changed to "Seller".

3. <u>ACH Payments</u>: The word "debt" on line 2, second full paragraph on page 5 of the Master JPA is changed to "debit".

4. <u>Full Force and Effect</u>. Except as specifically modified by the terms of this Amendment No. 1, the Master JPA remains in full force and effect and neither it nor this Amendment No. 1 may be amended or modified except in a writing executed by both Tri Global Financial Services, Inc. and Capital One Taxi Medallion Finance. Capitalized terms shall have the meaning give to them in the Master JPA.

TRI GLOBAL FINANCIAL SERVICES, INC.

By: _____
Name: DANIELLA ITIN
Title: VP
Date: 8-28-2012

CAPITAL ONE TAXI MEDALLION FINANCE

By: _____
Name: _____
Title: _____
Date: _____