| | |
|---|---|
| CAPITAL ONE EQUIPMENT FINANCE CORP. F/K/A ALL POINTS CAPITAL CORP. D/B/A CAPITAL ONE TAXI MEDALLION FINANCE, | |
| Plaintiff, | No. 19 CV 1806 |
| v. | Judge Manish S. Shah |
| BONUS TAXI INC., ET AL., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Tri Global Financial Services, Inc., a company formed to provide financing to owners of taxi medallions, loaned money to 31 taxi companies—the defendants. Plaintiff Capital One bought a 100-percent participation interest in each of those loans. Defendants defaulted. Capital One then attempted to sell and transfer the medallions. Under Chicago's taxi rules, if medallion holders assert defenses to foreclosure, the lender may not transfer them without a court order. So Capital One seeks a declaratory judgment allowing the foreclosure and transfer of the medallions. The taxi companies move to dismiss Capital One's complaint under Federal Rules of Civil Procedure 12(b)(7) and 19. They argue that Tri Global, and the individual Tri Global founders who guaranteed the defaulted loans, must be joined as defendants. Two of those individuals are citizens of New York and would destroy complete diversity. Alternatively, defendants contend that I should abstain from deciding this case pending the resolution of an ongoing related case between Capital One and Tri

Global in New York state court. For the reasons discussed below, defendants' motion is denied.

## I. Background

Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19." In considering a motion to dismiss under Rule 12(b)(7), I accept the factual allegations in the complaint as true. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). On a 12(b)(7) motion, a court may "go outside the pleadings and look to extrinsic evidence." *Id.* at 480 n.4.

### A. The Relationship Between Tri Global and Capital One

The City of Chicago issues licenses to operate taxi cabs, known as medallions. [1] ¶ 2.[1] The Chicago Department of Business Affairs and Consumer Protection promulgates rules for taxi-medallion owners and governs the ownership and transfer of the medallions. [1] ¶ 5.

In 2004, Symon Garber, Roman Sapino, Galina Garber-Sheinin, Valentina Zubok, and others formed Tri Global Financial Services, Inc. to provide loans to the purchasers of Chicago taxi medallions. [1-8] ¶¶ 1–5 (Exh. 68, Aug. 22, 2010 Garber Aff. of Defense). In 2006, North Fork Bank approached Tri Global about partnering to expand its lending platform, and the two companies entered into multiple loan participations. [1-8] ¶¶ 5–6. After Capital One acquired North Fork Bank, the partnership with Tri Global continued on a loan-by-loan basis. [1-8] ¶¶ 6–7.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

In 2010, Tri Global and Capital One entered into a more formal Master Joint Participation Agreement. [1] ¶ 58; [1-8] ¶ 8. Under the MJPA, Capital One bought a 100 percent senior participation interest in each of the loans that Tri Global made to the medallion owners, and Tri Global assigned and transferred all of its rights to each loan, including the collateral and the security agreement, to Capital One. [1] ¶¶ 58–61; [1-8] ¶ 10. Tri Global remained the loan servicer; it was responsible for collecting payments from the borrowers and paying Capital One on a monthly basis. [1] ¶ 64; [1-8] ¶ 10. Under the MJPA, if any of the loans defaulted, Capital One had the right to terminate Tri Global's interest in the loans and take over Tri Global's rights to service them. [1] ¶ 66.

In connection with the MJPA, Garber, Zubok, Garber-Sheinin, Sapino, and others executed a guaranty with Capital One. [1-8] ¶ 9.

## B.     The Loans to Defendants

In 2012, Tri Global loaned amounts ranging from $96,000 to $2,880,000 to each of the defendants in this case, 31 taxi companies; each loan was secured by a taxi medallion (about 160 medallions total) and was accompanied by a security agreement. [1] ¶¶ 2, 50; [1-1] (Exhs. 1–31, Promissory Notes); [1-2] (Exhs. 32–62, Security Agreements). Garber, Garber-Sheinin, or Zubok owned almost all of the taxi-company defendants and signed the agreements on their behalf. [1-1]; [1-2]. Sapino signed the security agreements on behalf of Tri Global. [1-2]. Section 7 of the security agreements executed between Tri Global and each defendant provided that, in the

event of a default, Capital One had the right to sell the medallions. [1] ¶¶ 4, 54, 77; [1-2].

In December 2015, the loans made to the defendants matured. [1] ¶ 65. All of the defendants defaulted by not paying the outstanding principal (more than $38 million) and interest due at maturity. [1] ¶¶ 3, 65. Capital One terminated Tri Global's servicing of the loans and assumed all rights that Tri Global had to enforce the loans. [1] ¶ 66.

In July 2018, Capital One exercised its right under the security agreements to sell the medallions; it sent foreclosure notices to the defendants and the BACP and advertised a foreclosure auction in the *Chicago Sun Times*. [1] ¶¶ 78, 81. The next month, Capital One conducted a foreclosure auction. [1] ¶ 76. Eighteen bidders attended. [1] ¶ 82. Capital One credit bid the medallions for $23,000 each, and offered to work with prospective bidders regarding accrued taxes and fees owed to BACP before it would allow transfer of the medallions. [1] ¶¶ 83–84. Capital One then notified the defendants and the commissioner of the BACP that it planned to transfer the medallions. [1] ¶ 87.

Under the city taxi rules, if the owner of a medallion being foreclosed upon sends an affidavit of defense to the lender, the medallion cannot be transferred without written consent of the medallion licensee or a court order. [1] ¶¶ 6, 115. Each defendant submitted an affidavit of defense to foreclosure. [1] ¶¶ 7, 87; [1-8] (Exh. 68, Aug. 22, 2010 Affs. of Defense). Garber, Garber-Sheinin, and Zubok filled out almost all of the 36 affidavits; they listed themselves as the owners of the taxi medallions

"either individually or through a company that I own." [1-8].[2] The defendants all asserted the same defenses to foreclosure. They argued that: (1) Capital One could not foreclose on the medallions because it had partnered with Uber and "precipitated the collapse of the Chicago taxi medallion industry"; (2) the defendants had not defaulted and did not owe the amount Capital One claimed; (3) the foreclosure violated the BACP taxi rules; (4) Capital One conducted an improper foreclosure sale process by promising to help bidders with the liens on the medallions; (5) Capital One breached its fiduciary duty to each defendant by partnering with Uber; (6) Capital One breached the implied covenant of good faith and fair dealing by partnering with Uber; and (7) the doctrines of "estoppel, waiver, ratification and/or acquiescence" barred Capital One's assertion that the medallion owners had defaulted. [1] ¶¶ 93, 97, 99, 101, 103, 106, 108; [1-8], *passim*. Capital One seeks a declaratory judgment that those defenses do not constitute valid defenses to a transfer through foreclosure. [1] ¶¶ 111, 119.[3]

### C.    The Other Lawsuits

In January 2017, Capital One filed two lawsuits. In Cook County court, it sued all but one of the defendants in this case, a number of other companies, Garber, Garber-Sheinin, Zubok, and Sapino. [1] ¶ 70; [19-1] (Exh. 1, Cook County Complaint). It sought to recover $48,240,000, the outstanding amount owed on 42 loans. [19-1] at 3–4. Capital One also sued Tri Global, Garber, Zubok, Garber-Sheinin, Sapino, and

---

[2] Maya Zubok filled out one of the affidavits. [1-8] at 197.

[3] Capital One named BACP only as a nominal defendant. [1] ¶ 9.

others in New York state court, alleging, among other things, that Tri Global had breached the MJPA and the guaranty. [19-3] (Exh. 3, Jan. 26, 2017 New York Complaint). The Cook County defendants moved to dismiss the Cook County case for lack of venue. [1] ¶¶ 71–72. In January 2018, the Cook County court dismissed that case with leave to file in New York. [1] ¶ 72.

In the New York case, Capital One brought 37 causes of action and requested compensatory damages in the amount of $73,632,882. [19-3] at 26. It alleged that Tri Global had breached three contracts: the MJPA, the guaranty executed in connection with the MJPA, and an information-rights agreement. [19-3]. It also alleged that Tri Global and individual defendants had engaged in fraudulent acts to avoid their obligations to Capital One.

Capital One's theory of breach of the MJPA was that it required Tri Global to repurchase Capital One's interest in loans that had been defaulted for 150 days, and Tri Global had not done so. [19-3] at 8–9, 24–25 (Count 2). Capital One also alleged that Tri Global breached the guaranty, which required Tri Global to pay all obligations in the event of an "unlimited guarantee event." [19-3] at 11–12. Capital One alleged that an unlimited guarantee event occurred and Tri Global had not paid Capital One what it owed, including outstanding sums related to the defaulted loans. [19-3] at 12, 28–29 (Counts 5–6).[4]

---

[4] The New York complaint referenced loans at issue in this case, as well as loans to other defendants in that case who are not defendants here. [19-6] at 7–8 (Exh. 6, List of Loans (listing 46 loans connected to 46 different borrowers, including all 31 of the defendants in this case)).

Capital One also brought several fraudulent-conveyance claims, accusing Tri Global of breaching the terms of the guaranty by selling, transferring, or disposing of assets while Tri Global's obligations were outstanding. [19-3] at 12–13, 38–60 (Counts 12–37). Capital One alleged that Tri Global knew that, as the value of taxi medallions declined, borrowers would be unable to satisfy their loan obligations to Tri Global, and Tri Global would then be unable to satisfy its obligations to Capital One under the MJPA. [19-3] at 13. Thus, Tri Global "engaged in a multi-year scheme to liquidate assets to cash, conceal assets from [Capital One], and consummate fraudulent conveyances." [19-3] at 13. Finally, Capital One accused Tri Global and other defendants of breaching a June 2016 information-rights agreement, brought two specific-performance claims regarding Tri Global's obligations to provide financial documents and records under that agreement, the guaranty, and the MJPA, and brought a takeover-of-servicing claim. [19-3] at 30–31 (Count 7); [19-3] at 31–33 (Counts 8–9); [19-3] at 36–38 (Count 11).

In response, the defendants denied the bulk of the allegations in Capital One's complaint and asserted 39 affirmative defenses. [30-2] (Exh. A, N.Y. Defs. Answer). Among other things, Tri Global argued that it had no obligation to repurchase the loans because Capital One representatives had instructed Tri Global to ignore its repurchase demands and instead engage in workouts with its borrowers, and Tri Global had relied on those representations, [30-2] at 83 (Affirmative Defense 33); estoppel barred Capital One's claims, [30-2] at 83 (Affirmative Defense 34); and

waiver, ratification, and acquiescence barred Capital One's claims, [30-2] at 84 (Affirmative Defense 36).

Tri Global, Garber, Zubok, and Garber-Sheinin also brought five counterclaims, arguing that Capital One: (1) breached its fiduciary duty to Tri Global by partnering with Uber; (2) breached the implied covenant of good faith and fair dealing by partnering with Uber; and (3) committed negligence by failing to act in a timely or commercially reasonable manner to approve loan modifications and restructuring proposals. [30-2] ¶¶ 30–51. Tri Global, Garber, Zubok, and Garber-Sheinin brought two declaratory-judgment counterclaims asking for judicial declarations clarifying language in the guaranty and stating that the repurchase demands in the MJPA were null and void. [30-2] ¶¶ 52–69.

Capital One moved to dismiss counterclaims one and three, as well as the parts of counterclaim two alleging breach of contract and breach of the implied covenant of good faith and fair dealing relating to Uber and loan modifications. The New York court granted the motion. [30-3] (Exh. C, Sept. 15, 2017 Decision and Order). The court found that the defendant-counterclaimants had not sufficiently alleged that Capital One had a fiduciary duty to them. [30-3] at 15. And nothing in the parties' agreements limited Capital One's ability to "pursue a business opportunity with Uber," even though Capital One's decision to do so "arguably created the very default for which [Capital One] seeks relief in this lawsuit." [30-3] at 15.

Capital One then moved for summary judgment in New York on its breach-of-contract claims under the MJPA and the guaranty. [30-5] (Exh. E, Aug. 20, 2018

Decision and Order). The New York court denied the motion, finding that the defendants were entitled to Capital One's internal documents and discovery on whether Capital One representatives advised the defendants to disregard its repurchase demands. [30-5] at 15–16. The court reinforced that the defendants were not entitled to discovery on any Uber-related claims, given its prior dismissal of those counterclaims. [30-5] at 15–16.

## II. Analysis

Defendants move to dismiss Capital One's complaint for lack of jurisdiction under Federal Rules of Civil Procedure 12(b)(7) and 19. They argue that Capital One failed to name Tri Global, Garber, Zubok, and Garber-Sheinin as defendants. Capital One is a citizen of New York. Tri Global was formed in Illinois and is headquartered in Illinois, and Garber-Sheinin is a citizen of Illinois. But Garber and Zubok are citizens of New York, so joinder of Garber and Zubok would destroy diversity jurisdiction. Alternatively, defendants argue that I should abstain from deciding this case under the *Colorado River* abstention doctrine pending the resolution of the New York lawsuit.

### A. Joinder

Joinder is a two-step inquiry. *Davis Cos.*, 268 F.3d at 481. First, a court must determine whether the absent party is "one that should be joined if feasible," known as a "required party," Fed. R. Civ. P. 19(a)(1), or sometimes as a "necessary party." *Davis Cos.*, 268 F.3d at 481 (quoting *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)). Under Rule 19(a)(1)(A), joinder of a party is required if the court cannot

afford complete relief among the existing parties without the missing party. Under Rule 19(a)(1)(B), joinder is required if the missing party "claims an interest relating to the subject of the action" and, if not joined, either the party's ability to protect its interest will be impaired, Fed. R. Civ. P. 19(a)(1)(B)(i), or an existing party will be at substantial risk of incurring multiple or inconsistent obligations, Fed. R. Civ. P. 19(a)(1)(B)(ii). *Davis Cos.*, 268 F.3d at 481. The party advocating for joinder "generally has the initial burden to establish the absent person's interest." *In re Veluchamy*, 879 F.3d 808, 819 n.4 (7th Cir. 2018). If the court determines that an absent party meets the criteria of Rule 19(a)(1), but the party cannot be joined because it would destroy complete diversity, the court must decide whether "in equity and good conscience," the action should proceed among the existing parties or be dismissed, based on a variety of factors. *Askew v. Sheriff of Cook Cty.* 568 F.3d 632, 635 (7th Cir. 2009) (quoting Fed. R. Civ. P. 19(b)).

Defendants rely on both parts of Rule 19(a)(1)(B) in asserting that the absent parties are necessary parties. Capital One argues that, as a threshold matter, defendants have not established that the absent parties have claimed "an interest relating to the subject of the action"—the medallions—under Rule 19(a)(1)(B), so I do not need to consider whether the absent parties are required under either part of the rule. Indeed, "in some circumstances the absent party itself must claim an interest relating to the subject matter of the lawsuit." *In re Veluchamy*, 879 F.3d at 819 n.4. Here, the absent parties have not been completely silent; the Garber affidavit is some indicia of Garber's interest. [19-2]. That affidavit merely parrots—almost entirely

verbatim—the factual allegations in defendants' motion to dismiss. It is not much of a showing of interest, but is enough to justify inquiry under the rest of Rule 19(a)(1)(B).

Beginning with 19(a)(1)(B)(i), defendants argue that, if the absent parties are not joined in this case, the absent parties' strategic position will be disadvantaged in the pending New York case. Specifically, defendants argue that a judgment here would entail a finding that the loans are in default, and would act as a merits judgment on their defenses to foreclosure. They argue that Capital One could use a judgment in this case on either of those two issues to its advantage in the New York litigation. But they don't explain how that advantage would impair the absent parties' "ability to protect [their] interest." Fed. R. Civ. P. 19(a)(1)(B)(i). The parties are litigating different issues in the two cases. Broadly, the New York litigation is about whether Tri Global breached the MJPA, the accompanying guaranty, and an information-rights agreement with Capital One, and whether it owes Capital One money as a result. None of the causes of action in that case address any party's rights to the medallions themselves. Here, in contrast, the parties are arguing about the foreclosure and transfer of the taxi medallions, a right that arose under the security agreements to the loans, not the MJPA. A cryptic claim of strategic advantage falls short without some showing of how foreclosure here would jeopardize the legal claims asserted against and by the absent parties in New York.

Defendants can't make such a showing because a finding that the loans are in default would have no effect on the New York litigation. The absent parties do not

seriously dispute the fact of default. In fact, acknowledging that the loans are in default is consistent with their litigation strategy, which is to accuse Capital One of partnering with Uber, causing the value of taxi medallions to fall and the borrowers to default. For example, in the absent parties' counterclaims in New York, they wrote that the destabilization of the taxi industry in Chicago (due to Uber) "contributed to significant monetary defaults across the parties' loan portfolio," and "payment defaults against the Borrowers became commonplace." [30-2] ¶¶ 24–25. They added, "the Borrowers' defaults under the non-performing loans were precipitated by Capital One's own misconduct" and described the loans as "purportedly-defaulted loans." [30-2] ¶¶ 52–54. Similarly, in opposition to Capital One's motion for summary judgment in New York, the absent parties attached an affidavit from Daniella Itin, who managed the parties' joint loan portfolio under the MJPA. [30-6] ¶ 1. Itin affirmed that when Capital One "exited the Chicago market," "borrowers quickly defaulted on their payments." [30-6] ¶ 12. Thus, a judgment here that defaults occurred would not disadvantage the absent parties. The dispute in New York is not over whether there have been defaults, but rather who caused those defaults and whether Tri Global owes Capital One money as a result.

I am likewise unpersuaded by defendants' argument that, if I allow Capital One to foreclose upon and transfer the medallions—rejecting the merits of their defenses to foreclosure—Capital One could use that decision to its advantage in New York. There is no longer any overlap between the defenses to foreclosure asserted here and the defenses and counterclaims the absent parties are pursuing in New

York. Here, defendants' first, fifth, and sixth defenses to foreclosure related to Capital One's partnership with Uber. The New York court dismissed all of the absent parties' counterclaims implicating Capital One's partnership with Uber, and barred further discovery on that matter. A judgment on the merits of that argument here would be of no use in New York.

Defendants' second defense is that they did not default on the loans, which, for the reasons just discussed, is not at issue in New York. And the other defenses to foreclosure asserted here are specific to this action and would have no bearing on the New York suit: whether Capital One properly conducted the public sale or violated any BACP taxi rules. Finally, defendants' seventh defense—that Capital One's claim of default is barred by "estoppel, waiver, ratification and/or acquiescence"—is too conclusory to determine whether it would lead to any factual overlap between the arguments defendants advance in this case and the absent parties advance in New York. Even if there were factual overlap, a decision from this court would be at most persuasive in New York, not dispositive.

Finally, even assuming that a decision in this case would have some effect on the proceedings in New York, defendants do not explain how joinder of the absent parties would prevent or change that possibility. Defendants' argument is essentially that resolving the case *at all* would prejudice the absent parties' interest in New York—they fail to establish how resolving it with or without the absent parties would make any difference.[5]

---

[5] An absent party is not a required party for Rule 19 purposes if that party's interests are "fully represented by parties present." *See Burger King Corp. v. Am. Nat. Bank & Tr. Co. of*

Turning to Rule 19(a)(1)(B)(ii), defendants argue that "the Absent Parties and Defendants" would face multiple or inconsistent obligations if the absent parties are not joined. [19] at 10. "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Grubb & Ellis Co. v. Huntington Hoffman, LLC*, No. 10-CV-5068, 2010 WL 4962846, at *3 (N.D. Ill., Dec. 1, 2010) (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (5th Cir. 1998)). Examples include "conflicting judgments regarding property ownership" or two different courts requiring an employer to give the same job to different unions. *Id.* (first citing *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1448 (7th Cir. 1990); then citing *Teamster Loc. Union No. 714 v. GES Exposition Serys., Inc.*, 494 F.Supp.2d 970, 974 (N.D. Ill. 2007)). An inconsistent obligation differs from an inconsistent adjudication or result. *Id.* An inconsistent adjudication occurs when a defendant "successfully defends a claim in one forum, yet loses on another claim

---

*Chi.*, 119 F.R.D. 672, 678 (N.D. Ill. 1988) (quoting *Moore's Federal Practice* ¶ 19.07 [2.1] at 19-104–19-106). Indeed, "prejudice to absent parties approaches the vanishing point when the remaining parties are represented by the same counsel, and when the absent and remaining parties' interests are aligned in all respects." *Am. Trucking Ass'n Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 360 (2d Cir. 2015) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 134 (2d Cir. 2013)); *see also Bank of N.Y. v. F.D.I.C.*, 508 F.3d 1, 7 (D.C. Cir. 2007) ("Rule 19 turns on the [absent parties'] ability to protect their interests, and a party can adequately protect a non-party."). Here, the absent parties' interests are "aligned in all respects" with the existing parties' interests. Garber, Zubok, and Garber-Sheinin own the defendant taxi companies. The existing and absent parties thus share the same interest: preventing Capital One from transferring the medallions. And given that all parties are represented by the same counsel, if joined as individual defendants, Garber, Zubok, and Garber-Sheinin would likely not advance any new arguments. After all, it was Garber, Zubok, and Garber-Sheinin who offered the taxi companies' defenses to foreclosure in the first place. To the extent defendants suggest that joinder would allow the absent parties to "assert and develop defenses" to Capital One's claims, [35] at 5, Garber submitted a largely identical affidavit in support of the motion to dismiss as his affidavit of defense to foreclosure. It seems unlikely that Garber withheld some defense in his affidavits that he would assert only if joined.

arising from the same incident in another forum." *Id.* (quoting *Delgado,* 139 F.3d at 3). Inconsistent adjudications do not require joinder.

Capital One rightly points out that Rule 19(a)(1)(B)(ii) is only concerned with existing parties, not absent parties. And defendants fail to explain how complying with a judgment in this case would breach a potential judgment in New York (or vice versa). First, none of the defendants in this case are defendants in New York, so they would not incur any binding obligations connected to that case. Defendants argue in reply that if the absent parties win in New York, "no medallions would ever be required to be turned over to Capital One." [35] at 6. But whether Capital One properly foreclosed on the medallions is not at issue in New York; the New York court is considering whether Tri Global breached the MJPA and owes Capital One money damages. And Capital One's claims to the medallions themselves arise under the security agreements executed in connection with each loan, not the MJPA or the guaranty (the contracts that are at issue in New York). It is not at all clear that the absent parties winning in New York would affect the ownership of the medallions. Defendants have thus not established a "*substantial* risk of multiple or inconsistent obligations." *Davis Cos.*, 268 F.3d at 485. Finally, even if there were some risk of inconsistent obligations, defendants again fail to demonstrate how joinder of the absent parties would negate that risk.

The absent parties are not required under Rule 19(a), so I do not consider whether the case can proceed under Rule 19(b). *See id.* ("Because we conclude that

[the absent party] is not a necessary party pursuant to Rule 19(a), we need not examine the factors articulated in Rule 19(b).").

## B. Abstention

In the alternative, defendants argue that I should abstain from deciding this case pending the outcome of Capital One's case in New York.

Federal-court abstention is the "exception, not the rule." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)). Abstention is justified only in "exceptional circumstances," *id.*, such as when "denying a federal forum would clearly serve an important countervailing interest." *Id.* at 496–97 (quoting *Quackenbush v. Allstate Inc. Co.*, 517 U.S. 706, 716 (1996)). Those interests include considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration. *Id.* at 497 (quoting *Quackenbush*, 517 U.S. at 716).

A federal court's ability to abstain under the *Colorado River* doctrine is "considerably more limited" than under other theories of abstention. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). A federal court may abstain when "parallel state court and federal court lawsuits are pending between the same parties." *Adkins,* 644 F.3d at 498. A court considering abstention under this doctrine must conduct a two-part inquiry. First, the court must determine whether the federal and state actions are "actually parallel." *Tyrer v. City of South Beloit*, 456 F.3d 744, 751 (7th Cir. 2006). If the two suits are parallel, the court must

consider whether exceptional circumstances "justify abstention." *Adkins*, 644 F.3d at 498.

Two suits are parallel if "substantially the same parties are contemporaneously litigating substantially the same issues." *Id.* (quoting *Tyrer*, 456 F.3d at 752). Abstention is appropriate only if there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* at 499 (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)). And any doubt regarding the parallel nature of the two suits "should be resolved in favor of exercising jurisdiction." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1019 (7th Cir. 2014) (quoting *AAR Int'l Inc. v. Nimelias Enterprises S.A.,* 250 F.3d 510, 520 (7th Cir. 2001)).

This case and the New York case are not parallel. "First, and most simply, the parties are different." *Adkins*, 644 F.3d at 499. There is no overlap between the defendants in this case and the New York case. While the absent parties might be "connected," [19] at 15, to the existing defendants, that is not enough to establish parallelism. *Adkins*, 644 F.3d at 499 (finding two suits with different parties not parallel even where the parties had a "general alignment of their interests").[6]

Beyond the parties, the claims are different. As described above, the parties in New York are litigating issues concerning breach of contract and fraudulent

---

[6] Defendants' argument that the New York case and this case are parallel because the parties in this case were also parties to the case dismissed in Cook County, [19] at 15, is misguided. The Cook County action is irrelevant to whether this case is parallel to the pending case in New York.

conveyances, and the parties in this case are arguing about the transfer of the medallions following foreclosure. And to the extent the defenses asserted in both cases overlap, the New York court removed any redundancies when it dismissed the New York defendants' claims relating to Capital One's partnership with Uber. *See Adkins*, 644 F.3d at 499 (cases not parallel where "claims in these cases [we]re different"). Resolution of the New York case would not dispose of the issues here. The New York court will not decide, for example, whether Capital One conducted a proper foreclosure sale or violated BACP taxi rules, two of the defenses to foreclosure asserted in this case.

And one "important factor" in determining parallelism is whether "both cases would be resolved by examining largely the same evidence." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 657 (7th Cir. 2011). The New York case will not involve any evidence about Capital One's alleged violation of Chicago taxi rules, and the parties are not exchanging discovery about Capital One's relationship with Uber. The difference in the evidence at issue in the two suits weighs against a finding that they are parallel. Finally, Capital One seeks different relief in the two cases. Capital One seeks money damages and specific performance in New York; here, it seeks a declaratory judgment.

Even if the suits were parallel, defendants have not established "exceptional circumstances" warranting abstention. Ten factors inform the exceptional-circumstance analysis: 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal

litigation; 4) the order in which the concurrent forums obtained jurisdiction; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim. *Adkins*, 644 F.3d at 500–01. I need not weigh all the factors equally. *Id.* at 501.

Defendants argue that all ten factors weigh in favor of abstention. I disagree. Factors one, two, six, seven, nine, and ten cut against abstention. Beginning with factor one, the New York court has not assumed jurisdiction over the medallions at issue in this case. Factor two considers the inconvenience of the federal forum; defendants have not explained how the federal court inconveniences them. This court's location in Chicago, where the defendant companies are headquartered, is presumably more convenient than the state court in New York. Regarding factor six, the adequacy of the state-court action to protect the plaintiff's rights, the New York action cannot adequately protect Capital One's interest in this case because, for the reasons discussed above, the issues here are not before the New York court. That court is not considering the propriety of the foreclosure sale or the transfer of the taxi medallions. Regarding factor seven, the relative progress of the two proceedings, the state-court action is more advanced. In that case, the parties have moved past the summary-judgment stage and are exchanging discovery, whereas this case is at the motion-to-dismiss stage. But the defendants in this case are not defendants in New York, so it doesn't matter that the New York case is at a later procedural stage.

Regarding factor nine, availability of removal, there is not complete diversity between the parties in New York, so removal is not available. Capital One is a New York corporation, while Garber and Zubok (two of the defendants in New York) are also citizens of New York. This case is the only available federal-court option for Capital One. As to factor ten, defendants have not explained how Capital One's federal claims are vexatious or contrived. At best, this is a neutral factor. Because of "the presumption against abstention," a "neutral" factor "weigh[s] in favor of exercising jurisdiction." *Huon*, 657 F.3d at 648. Factor ten thus favors Capital One.

Factors three, four, five, and eight cut in favor of abstention. Regarding factor three, the desirability of avoiding piecemeal litigation, the existence of two lawsuits might lead to piecemeal litigation. Factor four considers the order in which the two courts obtained jurisdiction, and the New York court obtained jurisdiction first. Capital One filed its lawsuit in that case in January 2017 and filed this suit in March 2019, more than two years later. Factor five, whether state or federal law governs the claim, favors defendants, since state law governs all the claims at issue in both cases. Finally, the availability of concurrent jurisdiction cuts for defendants, since a state court would have jurisdiction over the claims at issue here. Defendants are correct that there is no federal cause of action at issue in either case, and no federal interest that must be litigated exclusively in federal court.

But on balance, exceptional circumstances do not warrant abstention. Defendants are not parties to the case in New York, and the two cases present different issues. Any inconvenience to the defendants in these two cases having to

litigate separate but related issues in two forums at once is not an "important countervailing interest" that justifies the limited and exceptional remedy of abstention. *See Adkins*, 644 F.3d at 501 (finding threat of piecemeal litigation alone not an extraordinary circumstance warranting abstention).

## III. Conclusion

The absent parties are not necessary parties under Rule 19(a), so joinder is not required. Defendants' motion to dismiss, [19], is denied. I also decline to abstain resolving this case pending the resolution of the New York case. The two suits are not parallel, and, in any event, no exceptional circumstances warrant abstention. Defendants shall answer the complaint by December 10, 2019. A status hearing is set for January 15, 2020 at 9:30 a.m.

ENTER:

Manish S. Shah
United States District Judge

Date: November 19, 2019